| 13 | 233 |
| 77 | 303 |
| 13 | 233 |
| 82 | 284 |

## BULL vs. CONROE.

The constitution may be violated by a neglect of the legislature to discharge a duty enjoined upon it by that instrument.

After the legislature has passed exemption laws in pursuance of section 17 of article I of the constitution, it cannot constitutionally abrogate them entirely, without the contemporaneous passage of substitutes.

But the privileges extended to debtors by the existing exemption laws, are not, as to the particular property which comes within their protection, vested rights.

The legislature may modify those laws by general enactments affecting all debtors alike, according to the classes into which they are at present divided, provided such enactments do not amount to a total repeal of all exemptions, but leave debtors in the enjoyment of so much of the necessary comforts of life that the court cannot say readily and without hesitation, that the duty imposed by that section of the constitution is left unexecuted.

Dixon, C. J., adhering to his dissenting opinion in *Phelps vs. Rooney,* 12 Wis., 698, held that the discretionary power given to the legislature in respect to the kind and amount of property to be exempted from execution, is not absolute and unlimited; that the legislature may violate the constitution as well by exempting too much as too little, or by protecting those things which are not of the necessary comforts of life, as well as by refusing to protect those which are; and that the action of the legislature in this respect is not beyond the control of the courts.

The provision for exemption laws contained in sec. 17, art. I, can be executed by general laws only, and local or special legislation upon the privilege of debtors, which would deprive those residing in certain places or belonging to particular classes, of the advantage conferred by law upon others, could not be sustained.

As the legislature may abridge the privileges of debtors by laws which operate directly on the property, so it may accomplish the same thing as an incident of the power it possesses to enlarge the boundaries of cities so as to embrace lands used for agricultural purposes and occupied as homesteads.

A homestead of twenty-two acres of land used for agricultural purposes only, and as such exempt from forced sale on execution or other final process under the R. S. of 1849, was, by a *subsequent* act of the legislature, annexed to and included within the limits of the city of Racine, against the wishes of the own-

er, who still continued to use it for agricultural purposes only, and to occupy it as his homestead. *Held*, that after its annexation to the city, the law exempting agricultural lands not included within any recorded town plot or city or village, no longer applied to it.

Whether the legislature could, under color of making laws to regulate or extend the boundaries of cities, enact them for the mere purpose of cutting off or reducing the exemption of particular individuals, and thus legislate specially for or against certain persons, contrary to the spirit of the constitution, is a question not presented in this case.

APPEAL from the Circuit Court for *Racine* County.

The plaintiff, who was a married man, became seized in fee in 1848, of a tract of land containing a little less than twenty-two acres, situate near the city of Racine, and which has ever since been used by him for agricultural purposes only, and occupied by him and his family as a homestead. In March, 1856, this land, which had never been included in any town plot, city or village, was annexed to and included in the city of Racine, by force of chap. 83 of the private and local laws of that year, without the assent and against the wish of the plaintiff. In 1858 several creditors of the plaintiff obtained separate judgments against him for debts contracted after Jan. 1, 1849, and before the annexation of his land to the city, and levied their executions upon said land, and caused it to be advertised for sale under said executions, jointly, and by one advertisement. This action was brought to restrain the creditors from selling the land on said executions. The complaint, in addition to the above facts, stated that the tract referred to had never been within that part of the city populated and used as a city and for city purposes, was not platted into lots or intersected by the streets of the city, or approached by other highways than it had been before the annexation, and had never been, and as the plaintiff believed, never would be an actual part of the city, or necessary to it, or properly within its limits; and that he had always held, and still claims to hold it as agricultural land, exempt as his homestead from forced sale on execution.

The defendants demurred to the complaint on the grounds that several causes of action had been improperly joined, and that the complaint did not state facts sufficient to consti-

tute a cause of action. The court overruled the demurrer, and granted a perpetual injunction as prayed for; from which decision the defendant appealed.

*Paine & Millet*, for appellant:

The legislature has unlimited power to create, enlarge, modify or destroy municipal corporations, and the corporator holds his immunities and property subject to this power. He may either be made a corporator or excluded from the corporation, against his will. New territory may be added to a city, without the consent of its residents, however much their rights and interests may be affected by such annexation. *Weeks vs. The City of Milwaukee*, 10 Wis., 242, 262–3. 2. The plaintiff's exemption was not a vested right. It was neither a grant from the state nor an executed contract. The plaintiff held farming land as a homestead in the vicinity of a city, knowing that it was exempt only while it remained outside of the city limits, and that the legislature had power to include it within those limits whenever it chose. If he wanted a farming homestead free from such liability, he should have removed further into the country. His right of exemption could not exist independently of the statute creating it. It was subject to be modified either by a change in the general statute, or by any special act which, by annexing the land to a city, subjected it to the provisions of the exemption law affecting city property. The right is no more destroyed by the latter method than it would be by the former. 3. Even "vested" rights may be destroyed by legislation, as in the repeal of laws granting pensions for life (*Dale vs. The Governor*, 3 Stewart's Ala. R., 387), or of laws granting an equity of redemption, which is an estate in the land (*Butler vs. Palmer*, 1 Hill, 326), and in the case of bankrupt, insolvent and limitation laws.

*Ryan & Jenkins*, for respondent, contended that the plaintiff's right of exemption in the whole land, which existed prior to the passage of the act of 1856, was not divested by that act; that inasmuch as the constitution of this state imposes upon the legislature the duty of enacting exemption laws, after such laws were once passed a total repeal of them would be held to be void; that the due execution of this

constitutional provision can be by general laws only; that no local or special legislation can operate to defeat the principle, or to repeal or modify the general law (*Holden vs. James*, 11 Mass., 396; *Picquet's Appeal*, 5 Pick., 65); that every exemption, once acquired, thus becomes a vested right, defeasible only in measure by a change in the general public law of the state—a right which, in the strict sense of a vested right, is clearly recognized by the legislature of the state, and particularly by chap. 137 of the laws of 1858 (R. S., p. 798), where it is made the subject of a distinct law of descent; that the plaintiff's right of exemption in his agricultural land, once acquired, was defeasible only by some general legislation equally affecting all agricultural lands in the state; and that there was nothing in the decision in *Weeks vs. The City of Milwaukee* adverse to these principles. Counsel further contended that the general policy of our law was to exempt for every farmer, all his land not exceeding forty acres, actually used for agricultural purposes, and that it was not to be assumed that the design of the legislature in annexing the land in question to the city of Racine for certain municipal purposes, was to depart from that policy.

*C. S. Chase*, on the same side, in addition to the points above presented, insisted that as the debts upon which the appellants had obtained their judgments were contracted after the passage of the homestead law of 1848, and before the annexing act of 1856, so that these creditors had during that period no remedy at law or in equity, by which they could make the land liable therefor, the subsequent annexation of the land to the city could not enlarge their rights growing out of said contracts, nor diminish or take away the respondent's right to his homestead. *Bronson vs. Kinzie*, 1 How. (U. S.), 317; 8 Blackf., 57, and cases there cited; *Green vs. Biddle*, 8 Wheat., 1. He also contended that the annexation act was void, because it changed the limits of two assembly districts at a period other than that prescribed by the constitution of this state. Constitution, secs. 3 and 4, article IV; Laws of 1852, p. 777; Local Laws, 1856, p. 148; Gen. Laws, 1856, p. 111.

June Term,
1860.

BULL
v.
CONROE.

January 2.

*By the Court,* DIXON, C. J.   I entirely concur with the counsel for the respondent in the position that all parts of the constitution are equally binding and imperative, and that it is as susceptible of violation in respect to the positive prescriptions of duty which it contains, as to the restraints which it places upon the powers of the several departments of the government.   A continued disregard by the legislative or any other branch, of the duties imposed upon it, would be as productive of evil to the community at large, and as destructive of the objects for which the constitution was formed, as the usurpation, by the same branch, of powers which are expressly forbidden.   The one is a negative violation, and results from inaction, or a neglect to perform those things which the constitution commands; the other, a positive violation, and arises from overstepping the barriers erected by it, and doing those things which it prohibits. And the question whether it has or has not been violated in either respect by any one or more of the departments of the government, is in no wise affected or varied by considering whether it is or is not such a violation as may be checked or remedied through the agency of or by virtue of the powers vested in some other department.   It would be no less a violation because the constitution itself furnished no mode of redress.   Such is the nature of the authority which must in many instances be conferred, that under the constitution it admits of no superiority or control.   This is the case with the legislative power in many particulars, of which the duty imposed by the 17th section of the bill of rights is an example.   There can be no doubt that the courts possess no power to compel the legislature to enact the laws required by that section; nor could they, in the absence of any statutes upon the subject, by judicial decision supply the deficiency; but the omission would nevertheless be a clear violation of the plainly expressed will of the people.

I furthermore concur with counsel in saying, that although the failure of the legislature to perform a positive constitutional duty may be a wrong without a remedy, yet when such duty has once been executed, the legislature is deprived of all future power to leave it wholly unexecuted; and that

whilst it may, within the constitutional limits, vary or modify the laws by which that duty has been once performed, it cannot totally repeal them without the contemporaneous passage of substitutes. I do not think that so far as the laws exempting property from execution and sale for the payment of debts comply with the requirements of the constitution, the legislature has now the power to abrogate them entirely, and leave debtors without the protection which the constitution positively declares it shall give them.

I also agree with counsel, that the constitutional provision referred to, can be executed by general laws only, and that local or special legislation upon the privileges of debtors, which would deprive those residing in certain places, or belonging to particular classes, of the advantages conferred by law upon others, could not be sustained.

But I cannot assent to the proposition that the privileges spoken of in the constitution, and extended to debtors by existing laws, are, as to particular property which may come within the present protection, to be considered as vested rights, or as partaking so much of the character of such rights, that the legislature cannot, by future enactments, change or modify the laws so as to deprive debtors of a portion of the property which they now hold as exempt. It seems to me clear that if such statutes were general in their operation, and affected the interests of all debtors alike, according to the classes into which they are at present divided, and if they did not amount to a total repeal of all exemptions, but left debtors in the enjoyment of enough of the necessary comforts of life, so that we could not readily and without hesitation say that the constitutional duty was unexecuted, they would not be subject to objection on account of those clauses in the constitution which forbid the disturbance of settled rights of property. The immunities or benefits which debtors are to derive from the operation of such laws, are spoken of in the constitution as *privileges*, not *absolute rights*. They affect the remedies of the creditor, rather than the strict legal rights of the debtor. The words used imply that the framers, although they made it obligatory upon the legislature to recognize them, considered them mat-

ters of legislative grace or favor, and not vested rights grow-
ing out of grants from the state, or compacts between the
state and individual debtors. The state receives nothing,
and debtors pay no price the consideration for which does
not contribute to their own immediate and exclusive bene-
fit. They are more in the nature of gratuities commanded
by the constitution and enforced by the legislature, and
their perpetuity and safety, so far as future legislation is con-
cerned, must depend entirely on the clause in the constitu-
tion which requires them, and such other clauses as prevent
special or exclusive legislation upon subjects of general
concern.

The language of the constitution is general, and within it
there is room for the exercise of a wide discretion on the
part of the legislature. It declares that the privilege of the
debtor to enjoy the necessary comforts of life, shall be recog-
nized by wholesome laws, exempting a reasonable amount
of property from seizure or sale for the payment of debts.
As a general proposition, it may be said that it is for the
legislature to decide what are the necessary comforts of life,
and what amount of property may reasonably be exempted,
and to determine the sanitary properties of the laws by
which such exemptions are recognized. But I cannot as-
sent to the doctrine that the discretionary power given to
the legislature is absolute and unlimited, and that it may
not do violence to the clause, as well by exempting too much
as too little, or by protecting those things which are not of
the necessary comforts of life as well as by refusing to pro-
tect those which are ; or by the passage of unwholesome laws
as well as by neglecting to pass those which are healthful
and proper. Nor do I believe that the action of the legisla-
ture in this respect is entirely beyond the reach or control
of the courts. In my opinion upon the motion for a rehear-
ing in the case of *Phelps vs. Rooney* [12 Wis., 698], I have en-
deavored to give my views and the reasons which have led to
my conclusions upon this latter branch of the subject; but as
my brethren think differently, those views cannot be regarded
as the true exposition of the constitution in this particular.
I there endeavored to show that our present statute, accord-

June Term,
1860.

BULL
v.
CONROE.

ing to the construction which it received in that case, is void, for the reason that it exempts property which does not pertain to the necessary comforts of life, and to an amount which exceeds the bounds of reason and justice, and because the law is unwholesome and evil in its tendencies and effects. This, however, may be considered foreign to the present discussion, since the whole court is of opinion, notwithstanding any differences which may exist upon that question, that it is competent for the legislature, by general laws, and within the limits above stated, to withdraw the privilege and reduce the amount of property below what may be at present exempted. The legislature may, undoubtedly, if in its judgment the public good requires the modification, reduce the amount of agricultural lands to ten or twenty acres, and declare that the homestead shall embrace no more. Or it may regulate the exemption by the value instead of the area or extent in acres. Like changes may be made with regard to real property within town plots, cities, or villages. The amount of personal property at any time declared to be free from seizure or sale, may likewise be lessened, provided the legislature in all cases leave debtors in the enjoyment of enough of the comforts of life, so that it cannot be fairly and reasonably said that the requirements of the constitution remain in whole, or in any material part, unsatisfied.

It being determined that the privileges of debtors are not vested rights, and that the legislature may modify and abridge them by laws which operate directly upon the property, it only remains to be decided in this case whether the legislature may not accomplish the same thing as an incident or consequent of some other power which it constitutionally possesses and may lawfully exert; and whether the act, by virtue of which the boundaries of the city of Racine were extended so as to embrace the homestead of the respondent, is liable to censure on the ground of its being local or special in its character or operation, so far as it affects the privileges of debtors residing within the limits of the newly included territory.

It seems to follow from what has already been said of the nature of the debtor's privilege and the tenure by which it

June Term,
1860.

BULL
v.
CONROE.

is held, that the legislature could not, by simply conferring it, deprive itself of the future power to exercise some other constitutional authority, because such exercise might indirectly impair or diminish the extent of such privilege. It is indeed conceded by counsel that such would not be the effect, and that the legislature had the power, notwithstanding the immunity which the respondent previously enjoyed, to extend the limits of the corporation so as to include the land in controversy, and, for the purposes of municipal government, to subject it to all the burdens incident to such a corporation. This very question was decided in the case of *Weeks vs. Milwaukee,* in which it was held that the legislature had the power to do so. But it is contended that although the legislature may thus, for municipal purposes, annex adjoining lands and enlarge the territorial limits of cities, such annexation does not change the use to which the lands of the debtor are applied, or the character of his occupation, and cannot therefore curtail his privileges; but that for all the purposes of exemption his property is to be treated as if no change had taken place. The answer which was given to the position of counsel in *Weeks vs. Milwaukee,* that farming lands not needed for city purposes, but which had been annexed by act of the legislature to the city of Milwaukee, were, for the purposes of taxation, to be considered as if they had not been annexed, is an answer to this position also. It was there urged that the increased burdens consequent on annexation were unjust and oppressive to the proprietors of the farming lands thus added to the city, and furnished good ground for excluding them from the operation of the general rule, that all property must be taxed within the municipality in which it may be situated. It was replied that the question resolved itself into one of power, and it being admitted that the legislature had the power to annex adjoining territory, all the consequences which would legitimately follow from such annexation must be permitted to attach and take effect, and that the inconvenience, uncertainty and confusion which would ensue from the doubtful and ambiguous condition of such a district, were sufficient to deter the court from adopting such a rule. It was further-

more said that persons owning lands in the vicinity of cities and towns, must hold them subject to their disadvantages as well as their advantages, and that they must be supposed to have acquired them with full knowledge of the general power of the legislature to regulate and control the legal boundaries and extent of municipal corporations, and of the freedom with which such power may be exercised. These observations apply with equal force to this case, and seem to dispose of this part of the argument. The respondent must be deemed to have acquired and held his homestead subject to such changes in the municipal governments of the state as the legislature might see fit to make, and what he has lost in extent, (if the question of loss or gain can enter into the consideration of the matter at all), he must be deemed to have gained in the increased value of the remaining portion by reason of its nearness to a flourishing city, and the benefits which he receives from the new form of government. At worst, he is placed on the same footing with all other residents of our cities and villages, which cannot really be said to be any hardship or injustice, while the opposite rule, if adopted, might be productive of wrongs and mischiefs which neither the people nor the legislature ever could have intended. For then the selfish and perverse debtor might see a large city grow up around him without laying out his grounds for the convenience of the public, and by still holding his forty acres in the most central and valuable portion, he might set at defiance both his creditors and the public, and no efforts on the part of the legislature for the welfare or advantage of either would be of any avail.

The only limitation which courts can rationally fix to this general legislative power to alter or extend the boundaries of municipal corporations, is that established by the courts of Kentucky in the cases of *Cheaney vs. Hooser*, 9 B. Mun., 330; *City of Covington vs. Southgate*, 15 id., 491; *Sharp's Executor vs. Dunavan*, 17 id., 223; and *Maltus vs. Shields*, 2 Met. (Ky.), 553. And I confess that I see so many difficulties in the way of its application, that I very much doubt its correctness and propriety. In those cases the question of taxation is alone considered, and it is said with reference to it,

that the power of providing a local government includes ne-
cessarily the power of ascertaining and prescribing the extent
of the town, and the proper boundaries of its territorial ju-
risdiction; that the power and discretion of the legislature
on this subject are only limited by the discrimination to be
made between what may, with reasonable plausibility, be
called a tax for which the objects of the taxation may be re-
garded as a just compensation, and that which is palpably
not a tax, but is, under the form of a tax, or in some other
form, the taking of private property for the use of the public
without compensation; that exact equality in distributing
the burthen of local taxation is not attainable, and cannot
form the test of the distinction referred to, but there must
be a palpable departure from equality, or it must be palpa-
ble that the persons or their property are subjected to a local
burthen for the benefit of others, or for purposes in which
they have no interest, and to which they are therefore not
justly bound to contribute. It is furthermore said that in
order to bring a case within the operation of the rule, it must
be so flagrant as to authorize the conclusion, at first blush,
that the burden is imposed without any view to the interests
of the individual in the objects to be accomplished by it,
and for the mere purpose of taking private property for pub-
lic use, without compensation, and that the facts and cir-
cumstances showing such purpose must be clearly and un-
equivocally made to appear. The case of *The City of
Covington vs. Southgate,* where the limits of the city had been
extended so as to include 167 acres of land belonging to
Southgate, which was appropriated to fields, pasture and
woodland, was held to be within the rule, and the assessment
for city purposes void. In the other cases, the annexation
of agricultural lands in smaller parcels was held to be legal
and valid. But the doctrine is made to rest entirely upon
the clause in the constitution which prohibits the taking of
private property for public use without just compensation
made, and it is observed that however flagrant might be the
oppression, and though it might approach or amount to ac-
tual spoliation by the appropriation of the property of one or
a few to the exclusive benefit of the many, the constitution

June Term,
1860.

BULL
v.
CONROE.

in no other way furnishes any solid or available protection against the result of legislation so contrary to its spirit. One difficulty about the application of such a rule, in my estimation, is the great uncertainty and fluctuation which must ever attend its application to particular cases. Another is, that it seems to me to be an interference on the part of the courts with what was intended to be exclusively a matter of legislative discretion; and still another, that I do not see how the courts can thus impeach and set aside an act of the legislature, without inquiring into and impeaching the motives which influenced the legislature in passing it, which is a ground of objection to statutes that all courts, including those of Kentucky, expressly disavow.

These decisions furnish no support for the positions of counsel in this case, except so far as they may be said to bear indirectly upon the point that the legislation complained of is local or special in its character and operation. They do furnish some ground for contending that the legislature cannot, under color of making laws to regulate and extend the boundaries of cities or villages, enact them for the mere purpose of cutting off or reducing the exemptions of particular individuals, and thus legislate specially for or against certain persons, contrary to the spirit and intent of the constitution. Whether or not such a case, were it plainly made to appear, would fall within the objections which have been suggested to the doctrine of the cases referred to, it is unnecessary for us here to state, for the reason that we are of opinion that no such case is made by the complaint. It is only alleged that the respondent's land, at the time of the passage of the act annexing it to the city, was not within the territory which was actually populated and used for city purposes, and that it was only fitted for and used as agricultural land. This, at most, can only be regarded as the opinion of the respondent, upon a matter which rested solely upon the discretion and judgment of the legislature, and cannot be permitted to overturn or defeat the opinion which it has expressed in the form of a legislative enactment. If its judgment can be overruled at all, it can only be done upon facts and circumstances, admitted or proved, which conclu-

June Term,
1860.

sively show that the act in question was passed, under the guise of exercising some constitutional authority, for the express purpose of accomplishing an object which the constitution prohibits. In such cases, no presumptions against the fairness or integrity of the legislative body can be entertained.

The object of the act is apparently constitutional, and as the facts stated do not show it to be otherwise, or that it is, or was designed to be, special in its character or effect, it must be permitted to stand.

The judgment of the circuit court must therefore be reversed, and the cause remanded for further proceedings in accordance with this opinion.