FREDERICK VS. PACQUETTE and another.

A petition for leave to sell real estate of a decedent, addressed to the probate court by a person assuming to be administrator *de. bonis non* of such decedent, and the subsequent proceedings down to and including the report of the sale, cannot be read apart from the record of the appointment of such administrator and other proceedings in the settlement of said estate, to support the title of a party claiming under·such sale; but the whole record must be taken together.

Although such petitioner is described in the petition as administrator &c., the order of the probate court granting him leave to make the sale is not a judicial decision that he is such administrator; and the order and sale, though not appealed from, will be held void in a collateral action, if it appears from the whole record in the probate court that he was not legally appointed administrator.

ERROR to the Circuit Court for *Dane* County.

The action below was ejectment by *Moses Pacquette* and *Theresa Brisbois*, against *Adam Frederick*. The plaintiffs read in evidence the treaty made between the U. S. and the nation of Winnebago Indians, on the 1st of August, 1829, by one section of which it was agreed that from the land thereby ceded there should be granted by the U. S., "to be located without the mineral country, under the direction of the President * * to Pierre Pacquette two sections," and several sections to other persons named, with the qualification that said lands were "not to be leased or sold by said grantees to any person or persons, without the permission of the President of the United States;" and also a patent from the U. S. to Pierre Pacquette, dated August 20th, 1845, reciting that sections 18 and 20 in T. 8, R. 8, had been ·located as the reserve of said Pacquette in conformity with the treaty, and that the same were thereby granted to said Pierre Pacquette and his heirs,

" but according to the terms of the fifth article of said treaty, not to be leased or sold by said grantee to any person or persons whatsoever, without the permission of the President of the United States." The land in controversy is part of the sections so granted, and the plaintiffs are the only children and heirs of Pierre Pacquette, who died intestate, in the territory of Wisconsin, in September, 1836, they being, at his death, between five and nine years of age. Upon proving these facts, the plaintiffs rested.

The defendant claimed title through an administrator's sale, and offered in evidence a transcript of the record of certain proceedings in the probate court of Crawford county, being: 1. An order appointing Alfred Brunson administrator *de bonis non* of the estate of Pierre Pacquette, deceased, and the letters of administration issued to him, dated 11th October, 1845. 2. The petition of Brunson for an order to sell real estate for the payment of debts, filed in said court on the 24th of October, 1845, which was verified and was in these words: " The petition of the undersigned, administrator *de bonis non* of the estate of Pierre Pacquette, deceased, respectfully represents that from the statement and final settlement of H. L. Dousman and Joseph Pacquette, administrators of said estate, there appears to be yet due to the creditors of said estate the sum of $6,891.04, and that there are yet unsold seven sections of land &c., all of which, it is believed, will be required to discharge the said balance due the creditors, &c. Your petitioner therefore prays an order for the sale of said real estate," &c. 3. A notice of the hearing of the application for the sale of said real estate. This notice was signed by Alfred Brunson, and stated that he had applied to said court for a license to sell all the real estate of Pierre Pacquette which had not been sold, consisting of seven sections of land granted to the Winnebago half-breeds, &c., the sale being necessary to pay the debts allowed against the estate, and that said court had appointed the 31st

of December, 1845, at 10 o'clock, A. M., to hear said petition, and that all persons concerned were requested to take notice thereof, and then and there show cause, if any they had, why license to sell said real estate should not be granted. This notice was dated October 21, 1845, and there was attached to it the affidavit of the publisher of a newspaper published at Madison, that a copy of the notice had been published in that paper for four successive weeks, commencing on the 6th day of November, 1845. 4. An order of said court for the sale of said real estate by Brunson as administrator *de bonis non*, made on the 31st of December, 1845. 5. A copy of the bond executed by Brunson and his sureties, payable to the judge of probate of Crawford county, with condition that he should faithfully observe the directions of law in the sale of said real estate, and dispose of the proceeds of the sale agreeably to law. 6. A copy of the advertisement of sale, with the proof of publication, and an account filed by Brunson in the said probate court, on the 23d of November, 1846, stating the price at which each tract of land was sold by him, with a statement of the expenses of the sale, showing the amount left for distribution among the creditors, and an order of the court directing its distribution among the creditors *pro rata*. The defendant, upon offering said transcript, proposed to follow it with proof of a deed for the land in controversy from Brunson, as administrator *de bonis non*, to one J. T. Clark, the purchaser at said sale, under whom the defendant claimed title. The evidence was objected to and excluded. The defendant then offered in evidence a transcript of *all* the proceedings in the matter of the Pacquette estate, which included also the grant of letters of administration on the estate in January, 1837, to H. L. Dousman and Joseph Pacquette, and their petition in May, 1841, for leave to resign their trust, and an order of said court declaring that "in accordance with their petition their account be accepted and they be discharged from any further liabilities or responsibilities on account of the said estate of

Pierre Pacquette." The entire transcript was rejected by the court. Verdict and judgment for the plaintiffs; to reverse which judgment this action was brought.

*P. L. Spooner* and *J. C. Hopkins*, for plaintiffs in error :

1. The land was liable to sale in due course of administration for payment of the debts of Pierre Pacquette. 1 Ohio, 187; 4 McLean, 82. 2. The notice by publication was sufficient to bring the heirs into court as parties to the proceedings instituted by Brunson as administrator *de bonis non*. The statute required only that the court should order " due notice" to be given to all parties concerned, and " the way and manner of giving notice under that statute was vested in the discretion of the probate court." COLE, J., 13 Wis., 320 ; 6 N. H., 372. 3. The probate court had jurisdiction to order the sale of the real estate of a deceased debtor for the payment of his debts, upon a proper application by his administrator. But it is said that Brunson was not the administrator of Pacquette (13 Wis., 291), and therefore the court had no power to order a sale of the land on his application. His petition for the sale of the land stated that he was the administrator, and he made the application in that capacity. The words " administrator *de bonis non* " in the petition are not to be regarded as a mere description of the person. " The distinction between cases where the plaintiff counts on a cause of action which could only accrue to him in his representative character, and cases where he counts on causes of action which he avers have accrued to him since the death of the testator or intestate, seems to be this : that in the first class of cases the terms A. B. as administrator &c., plaintiff, are explained and their meaning fixed by the averring of a cause of action which could alone be maintained by the plaintiff in his representative right ; whereas, in the second class of cases the reverse is true, because the plaintiff, by averring a cause of action which accrued to him since the death of the testator, repels the presumption that the terms "administrator &c." were intended to indicate the right in

which he sues, unless other and more definite terms are brought to their aid." 6 Eng. (Ark.), 438. If the heirs had been adults, the representative character of Brunson would have been admitted by their failure to answer; but being infants, it was the duty of the court to inquire into the truth of the matters alleged in the petition, in the same manner as though they had been denied by answer. The court must be presumed to have done its duty. 1 Greenl. Ev., sec. 19. Suppose the infants had answered that the plaintiff never was administrator of their father's estate. No one could deny that the court had jurisdiction to try that issue. It is equally clear that upon the hearing, after default of answer, the court had the power to decide that same question, and its decision, however erroneous it may have been, is conclusive upon the parties until reversed. The jurisdiction of the court as to the subject matter may be illustrated in another way. Mr. Justice PAINE, in 13 Wis., 302, adopts the following definition of jurisdiction: "If the petitioner presents such a case in his petition that the court, upon a *demurrer* to it, could render a judgment in his favor, it is an undoubted case of jurisdiction." We accept this test. The petition of Brunson stated that he was the administrator of Pacquette, and alleged the other facts necessary to be stated in such a petition. A demurrer to the petition must therefore have been overruled, and so it was an undoubted case of jurisdiction. It may be that upon applying this rule to the petition of Brunson to be appointed administrator, it would appear that the probate court had no jurisdiction to make that appointment, and this was the purpose for which the rule was quoted by Mr. Justice PAINE. That is a question we do not discuss. Jurisdiction to make the appointment is one thing; jurisdiction to make the order of sale another. It is enough that on the hearing of the petition for the sale, the probate judge was called upon judicially to decide upon the validity of the appointment, and that he then adjudged it to be valid. His adjudication is

none the less conclusive because he was passing upon the validity of one of his own antecedent judicial, or extra-judicial, acts.

*J. C. Ford*, for defendant in error, relied upon the decision in *Sitzman v. Pacquette*, 13 Wis., 291, and argued that the probate court never acquired jurisdiction over the *estate* of the deceased. The resignation of the first administrator not being valid, he continued to be administrator; hence the petition of Brunson for leave to sell the real estate, was that of an entire stranger to the proceedings. So with the advertisement of sale and the sale. It was by one entirely unauthorized, and hence carried no title. Again, his petition for leave to sell the real estate does not state that the personal property of the deceased had been exhausted, and debts remained unpaid, as the statute requires. Statutes of 1839, p. 316, § 25. This was necessary to give the probate court jurisdiction. *Thatcher v. Powell*, 6 Wheat., 119; *Young v. Lorain*, 11 Ill., 636; *Shivers v. Wilson*, 5 Har. & Johns., 130; *Griffith v Frazier*, 8 Cranch, 25; *Miller v. Brinkerhoff*, 4 Denio, 118; *Dentler v. The State*, 4 Blackf., 258. 2. The probate court never obtained jurisdiction of the *persons* of the heirs of *Pacquette*. The law required that a guardian be appointed for the infants, and that they have personal notice of the proceedings, in order to bind them. Statutes of 1839, p. 317, § 39; *Smith v. Rice*, 11 Mass., 507; *Sibley v. Waffle*, 16 N. Y., 180; *Palmer v. Oakley*, 2 Doug. (Mich.), 478; 1 Hill, 130.

*By the Court*, DOWNER, J. The facts in this case, so far as any question arises on them, are the same as in that of *Sitzman v. Pacquette*, 13 Wis., 291. A question, however, somewhat different from any passed upon in that case is presented by the counsel for the plaintiff in error. They say, grant that Brunson was not in fact administrator *de bonis non*, yet his petition as such for leave to sell the land of which Pierre Pacquette died seized, the notice of the application to the heirs, and the

order of the probate court authorizing the sale to be made, are all regular on their face, and show *prima facie* that the probate court had jurisdiction of the subject matter and of the parties ; and if so, its decision, however erroneous, is conclusive until reversed. This view is based upon the isolation of a portion of the record of the probate court in the matter of the estate of Pacquette. It supposes that that part which pertains to the sale of real estate is a complete record in and of itself, and that which pertains to personal property may be another complete record, and that which pertains to the appointment of an administrator is still another complete record. Our view is, that the whole record, from and including the appointment of the administrator down to and including the sale of the real estate, is but one continuous record ; and it must all be considered as before the court and the parties upon the application to sell and confirm the sale of the real estate. It is proper to consider it as one entire record. This court has twice decided that this record showed that Brunson's appointment as administrator *de bonis non* was void, and that his sale of the real estate was void. We adhere to the former decisions.

Judgment of the court below affirmed, with costs.

The plaintiff in error moved for a rehearing, and on that motion his counsel argued as follows: As the petition for the order of sale stated all that the law required, the court was bound to give the petition a hearing ; and the power to hear and determine the case upon the *allegations made*, was jurisdiction. 13 Wis., 303 ; 10 id., 17. It is said that one of the jurisdictional facts, although alleged in the petition, did not *actually exist.* But the allegations are one thing and the proof of them is another. How can a court know that the jurisdictional facts alleged do not exist, until it hears the case ; and how can it hear a case without jurisdiction to hear it ? To say that its jurisdiction depends upon the existence of certain facts, and that it has no jurisdiction to enquire whether those facts do

exist, seems to be absurd. But it may be said that a court of limited jurisdiction has necessarily a right to proceed with a case so far as to hear proof as to the existence of the jurisdictional facts, but that if on the hearing the jurisdictional facts are not proven, then the jurisdiction ends. But who is to judge whether the jurisdictional facts are proven? The judge who hears the proof must necessarily come to such a decision upon that point as seems right to him; and the question arises, If all the jurisdictional facts are alleged in a complaint, and the judge, upon a hearing, finds that the facts are true as alleged, and jet the jurisdictional facts did not *really* exist, and the proof, spread upon the record of the case, did not *justify* his finding, what effect is to be given to the judgment? How this question should be answered when the proceedings were *ex parte*, and when consequently the persons affected by it had no opportunity to appeal from the decision, we need not here inquire. The question here is, what effect is to be given to such a judgment as between parties to it, while it remains unreversed. In other words: Can a *party* to a proceeding in a court of limited jurisdiction assail the judgment collaterally, upon the ground that the jurisdictional facts stated in the petition or complaint were not proven or did not exist? It seems to us not. To say that the judgment of a court which has no jurisdiction, is a nullity, and that if the jurisdictional facts did not exist, the court had no jurisdiction, is to ignore the true question, which is, whether a party to the judgment can be permitted to say that the jurisdictional facts adjudged to have existed, did not exist. We think he is estopped to say so; and if he cannot say so, that is an end of the question. This is the turning point of the controversy; and we can find no language upon the subject more explicit than the following: "If a tribunal is authorized to act upon a certain state of facts and also to try whether the facts exist, then if they are properly alleged before it, and the parties are legally notified and have opportunity to contest them, the finding of such a tribunal,

upon those facts would be the finding of a *competent* tribunal, and ought to be *conclusive* until reversed in a direct proceeding." *Wanzer v. Howland,* 10 Wis., 16.   What we have claimed is only this: that where jurisdiction over the *person* is necessary and has been acquired, and the power of the court to adjudicate between the parties depends upon the existence of certain facts properly alleged, and which may, like the merits, be contested on the trial, there the judgment of the court is conclusive as to the existence of those facts, until it is reversed.   We believe this proposition is too well settled to be debatable.   10 Wis., *supra* ; 4 Wend., 436 ; 20 Wend., 241 ; 1 Selden, 424. It is said however that the minutes of the probate court made previously to the filing of Brunson's petition, and the papers then on file in the Pacquette administration, showed that Brunson had not been duly appointed administrator and thus established the non-existence of a jurisdictional fact.   But a demurrer to the petition would have reached the petition only, it would not have run back through the minutes of previous proceedings in the estate and searched the files for something which might defeat the petition.   The most that can be said of those minutes and files is, that, on error or appeal, they might be regarded as a part of the evidence in the case, and in that way be used to show that the judgment was erroneous.   In 4 Wend., 436, the plaintiff sought to impeach an administrator's sale collaterally, by showing from the inventory and the administration account presented to the surrogate on the application for the order of sale, that there was no necessity for a sale in order to pay the debts.   That necessity was a jurisdictional fact.   But the court said : "In deciding upon the sufficiency of the assets he (the surrogate) acts judicially, and an error in this matter does not affect his jurisdiction.   It is his duty to settle that question.   If he errs, his determination may be corrected and reversed on appeal ; his proceedings are not void, but voidable only."   So if the probate judge decided erroneously the question whether Brunson's appointment was

void or not, it was still a question which he had a right to de-cide ; the error was made in the exercise of jurisdiction ; and the judgment is binding until reversed.    Having failed to an-swer the petition or to appeal from the judgment, the heirs cannot cast upon a purchaser at a judicial sale the perils of an issue which they were brought into court to meet, and which they alone had an opportunity to litigate.   A purchaser in such case may be charged with the duty of seeing that the pe-tition stated facts which called into exercise the jurisdiction ol the judge, and that the heirs were duly brought into court (for these things he may ascertain); but if a man cannot buy safely until he has examined all the previous minutes and papers on file to see whether the judge may not have made a *mistake* of *judgment* as to the existence of a jurisdictional fact, prudent men will cease to bid at such sales.   If the petition in such case states all the jurisdictional facts, and the heirs, though made parties, are not bound by the judgment, but may con-test in a collateral action the existence of any -jurisdictional fact, to what end are they brought into court ?

The motion for a rehearing was denied, and the following opinion filed, on the 27th of June, 1865.

*By the Court*, DOWNER, J.   A motion for rehearing having been made in this case, we are asked to reconsider the opinion delivered at the last term of this court.    It is maintained that we were mistaken as to the question presented for considera-tion having been twice passed upon previously by the court. It is true that in the case of *Sitzman v. Pacquette*, 13 Wis., 241, Chief Justice DIXON took no part in the decision, and that the other judges were divided in opinion, which resulted in affirming the judgment of the court below.    The trial in the circuit court was before the chief justice, then circuit judge, and the views taken by him of the record of the county court were affirmed by this court ; and subsequently in the case of *Showers v. Pacquette* the same question was presented, and the

chief justice and Mr. Justice PAINE (Justice COLE dissenting) affirmed the judgment of the circuit court, without giving any written opinion, but announced from the bench that the majority of the court concurred in the opinion of Justice PAINE in the case of *Sitzman v. Pacquette;* and the majority of the court in this case concur in and adopt that opinion as the opinion of the court.

It is again urged that the question presented is as to the *jurisdiction* of the probate court to make the *order of sale,* and that the petition of Brunson for license to sell shows on its face enough to give jurisdiction ; that it alleges that he was administrator *de bonis non* of the estate of Pierre Pacquette, deceased, and all other facts nesessary to show jurisdiction, and that due notice was given to all interested, and that thus everything was fair on the face of the record, and the court had jurisdiction of the subject matter and of the parties, and in ordering the sale necessarily must have decided, and did decide, that Brunson was administrator *de bonis non*; and consequently that the judgment decreeing the sale is conclusive until it is reversed.    The only allegation in the petition for leave to sell real estate, of the official character of Brunson, is the following : " The petition of the undersigned, administrator *de bonis non* of the estate of Pierre Pacquette, deceased." It is at least very questionable whether, if an administrator had commenced a suit in any other court than that by which he had been appointed administrator, this could be regarded as a sufficient allegation that he was administrator, and in the probate court it may be considered as a mere reference to his appointment, well known to the court, so as to give the court information of the character in which he appeared.    It was not necessary that there should be any judgment of the court that he was administrator, and none was given.    The court had previously appointed him administrator, and that was equivalent to a judgment of the court that he was administrator.    In all sub sequent proceedings in the settlement and administratio of

the estate, the probate court takes judicial notice of the appointment. If the probate court decided, on the application of Brunson for leave to sell real estate, that he was administrator, then on each petition or request by the administrator for leave to sell real estate or to authorize him to compromise a claim, or to appoint commissioners to divide real estate, or to settle his account, or for authority to do any of the many acts which in the course of administration he may be required to obtain special authority for doing, the probate court also decides that the administrator is administrator; and it would make the same decision in the course of the administration of the same estate over and over again. We are of opinion that the probate court is not required by law to make, and does not ordinarily make, any decision as to the official character of an administrator after his appointment, unless an issue on that subject is made. As we said in our former opinion, we regard the whole record of the probate court respecting the settlement of any estate as one continuous record, and before the court on each application; and the petition for license to sell real estate is to be considered the same as though the appointment of Brunson by the probate court and all the proceedings relating to it had been inserted in and made part of the petition.

The motion for a rehearing is overruled, with costs.