J. B. WATKINS LAND AND MORTGAGE COMPANY ET AL. v. W. S. ABBOTT AND WIFE.

Delivered October 21, 1896.

**Homestead—Rural or Urban.**

A farm of thirty-three acres, the house and nine acres being within and the remainder without the corporate limits of the City of Greenville at the time of its purchase and designation as a homestead, not laid off into lots or blocks, but occupied and used by the owner as a farm, was all exempt from execution as a rural homestead.

APPEAL from the District Court of Hunt County. Tried below before Hon. E. W. TERHUNE.

*W. L. Williams* and *B. F. Looney*, for appellants.—Where the lines of an incorporated city have been located, so that it divides a tract of land, leaving part within and part without the city limits, and the head of the family, subsequent to the time of the territory becoming a part of a city, acquired title to an entire tract of land, part within and part without, and voluntarily fixes his homestead within the city upon that portion of said land within the city, he cannot claim as a part of his urban homestead the portion without the city and cannot claim the whole as a rural homestead.   Constitution, art. 16, sec. 51; Rev. Stats., art. 2336; Taylor v. Boulware, 17 Texas, 74; Posey v. Bass, 77 Texas, 512; Iken v. Olenick, 42 Texas, 197.

*Matthews & Neyland*, for appellees, cited:   Taylor v. Boulware, 17 Texas, 74; Rogers v. Ragland, 42 Texas 442; Posey v. Bass, 77 Texas, 514.

COLLARD, ASSOCIATE JUSTICE.—This suit was brought by appellees, W. S. Abbott and his wife, against the appellants, March 1, 1893, to cancel a deed to land executed by the United States Marshal under sale made by virtue of an execution issued out of the Federal District Court for the Northern District of Texas on a judgment therein rendered in favor of J. B. Watkins against W. S. Abbott.   Plaintiffs below claimed that the land levied on and sold was a part of their homestead at the time, and was not subject to sale under execution.

The question is, was the land sold the homestead of Abbott and his wife at the time of the sale?

The lower court, trying the case without a jury, decided that it was homestead and rendered judgment for plaintiffs, from which this appeal has been taken.

There being no statement of facts in the record, we must adopt the findings of fact filed by the trial judge as the facts proved.   The court's findings of fact are as follows:

"1.   Greenville was incorporated as a city of over one thousand inhabitants under the general law about 1880.   This incorporation was a square, the lines running one-half mile from the court house as the center, and all territory in these limits was platted and mapped into lots, blocks, streets and alleys.

"2.   In 1885 or 1886 the corporate limits of the city were extended a half mile each way, so as to make a square two miles square.

"3. · That part of the corporation beyond the old limits in the northwest part of the city has never been settled up as a city and has never been mapped or platted as city property, and no streets have been opened over it.   All of this part of the corporation is in farms, and farms entirely surround plaintiffs' property.

"4.   In 1887 plaintiff, Abbott, bought the thirty-three acres of land described in his petition for a home and farm for himself and family. The two first described tracts adjoin each other; the third tract is sepa-

rated from the others. When Abbott bought, part of the land was in cultivation, and there was the shell of a residence upon it where the dwelling now stands.

"5. Abbott was then and is now a married man, and he and his wife and four children moved upon the land in January, 1887. They repaired the house, enclosed all the land, and have lived in this house and cultivated all the land every year since, living upon the revenues of the farm. Abbott has never owned any other land, and the entire property has never been worth exceeding $2000. Abbott is an invalid, unable to work, but farming is and has always been his calling.

"6. Abbott has never sold off any of the property, and bought expecting to use the property as a farm. There have never been any lots, blocks, streets or alleys laid off, mapped or opened on or across any part of the land nor the adjacent farms. The highways are the public roads as they were opened before the corporate extension.

"7. Abbott's residence is on the north line of the corporation and near the northwest corner. The house is entirely inside the corporate limits, but the north line strikes the north end of the north part of the dwelling, so that the roof extends over the line and outside the coporation. The smoke-house, barn, hen-house and other out-houses are about thirty feet north of the residence and all outside of the corporation. There are about nine acres of land inside the corporate limits, exclusive of three acres taken by the railroad for right-of-way and water-pool; the balance is on the outside.

"8. Abbott claimed his residence inside the corporate limits and voted in corporation elections, rendered nine acres of the land for taxation in the city, and sent his children to the city public schools.

"9. Defendant Watkins recovered a personal judgment against Abbott in 1892, had a valid execution issued upon this judgment in October, 1892, which he had levied upon all the property described in plaintiffs' petition which lay outside the corporation. This land was sold under such levy and bought in by Watkins for the J. B. Watkins Land Mortgage Co. and a sheriff's deed made to him January 12, 1893. His bid was credited upon the execution.

"10. Watkins holds the title acquired under the sheriff's deed in trust for the J. B. Watkins Land Mortgage Co., of which he is president and general manager, and the company threatened ejectment proceedings against Abbott before this suit was filed."

*Opinion.*—From these facts the court below concluded that the land outside of the corporate limits was homestead and could not be sold under execution. In our opinion the lower court was correct.

In the case of Taylor v. Boulware, 17 Texas, 74, it was held that when the limits of a town are extended so as to include a country homestead, the latter does not immediately become an urban homestead, and would not until the plan or plat of the town is extended accordingly,

either by buildings or by survey, or, at least, by an ordinance establishing streets.

In the case of Posey v. Bass, 77 Texas, 512, it was held that the extension of the corporate limits of a town over a rural homestead, and the laying out of contiguous lands into streets, and dividing them into blocks and lots, will not deprive the homestead of its rural character or restrict the rural homestead to the land actually used.

The Constitution protects the homestead of a family from forced sale, and also declares that a rural homestead shall not consist of more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon, and that a homestead in a city, town or village shall consist of a lot or lots not to exceed in value five thousand dollars at the time of their designation as a homestead, without reference to the value of any improvements thereon. Constitution, art. 16, sec. 51.

A homestead, then, limited to a lot or lots in a city, town or village, must be in a city, town or village; if not in a city, town or village, it is limited to two hundred acres of land, and not less.

There must be a city, town or village where the homestead is, to give it the character of an urban homestead, and if there be no town in fact where the homestead is, it must be a rural homestead. The cases cited make plain the distinction that though a homestead may be in the corporate limits, yet if there be no city or town in fact where the homestead is located, it is not in a city or town. If it be laid off by survey or by plat into blocks, lots, streets, etc., it becomes a part of the city, though there may be no buildings defining the same. But the mere extension of the corporate limits would not make a town where there is none in fact. If it would not make a town in fact, in the constitutional sense, where the homestead is already established, as decided in the foregoing cases, it would not make a town or city in that sense where the homestead is acquired after the corporate limits are extended to include it. It may be within the corporate jurisdiction as territory, but not in a city or town.

Suppose the owners of the homestead in the cases cited had conveyed it, would the court have held that the vendee could not claim it as a homestead by the same right the vendors had? Would the sale have changed the facts constituting homestead?

The question in this case is, Was the land claimed as a homestead in a city or town? The facts show that it was not. How, then, can it be limited to the dimensions of an urban homestead?

This question also suggests the fact that there were no lots or lot on which it was situated to bound or limit it as provided in the Constitution by lot or lots. Hence the doctrine in the cases cited, that there must be some survey, plat or plan of the town to meet the terms of the Constitution defining a town homestead.

The property in question was a country homestead, consisting of a residence, out-houses and farm, used as a country homestead, entirely

surrounded by other farms. In no sense was it or any of it a part of the City of Greenville, except as to corporate jurisdiction.

The conclusion of the court below that all of it was a country homestead and no part of it subject to the sale under execution was correct.

The assignments of error impeaching this conclusion should not be sustained, and the judgment of the lower court is affirmed.

Writ of error refused.                                     *Affirmed.*