## L. H. LAUCHHEIMER & SONS ET AL. v. J. R. SAUNDERS.

### No. 1250.  Decided November 19, 1903.

**Homestead—Urban or Rural.**

Considering the undisputed facts showing the growth of a town about the residence and nine acres of a former rural homestead, it is held that its character had been changed to an urban one, and that the adjoining 100 acres of the former rural homestead, lying outside the town, could be sold under execution. (Pp. 139-142.)

Error to the Court of Civil Appeals for the Third District, in an appeal from Coryell County.

The opinion states the case.

*T. F. Bryan,* for plaintiffs in error Lauchheimer & Sons.—The verdict of the jury was contrary to the evidence on the homestead issue in this: (a) It is shown without conflict or contradiction, that plaintiff's nine-acre lot was one of the first residence lots built upon in the town of Gatesville after said town was established and made the county seat of Coryell County; that it had all the insignia of urban property when plaintiff moved on it; that plaintiff lived in the town of Gatesville at the time he purchased the 100-acre farm in controversy; and that he continued to live in said town to the time of defendants' levy of execution on said farm. (b) The farm is shown to be rural, and there can be no blending of urban and rural property as homestead. Lauchheimer v. Saunders, 19 Texas Civ. App., 392, 27 Texas Civ. App., 484; Wilder v. McConnell, 91 Texas, 603; Taylor v. Boulware, 17 Texas, 74; Foust v. Sanger, 13 Texas Civ. App., 410.

*J. H. Arnold* for G. Y. Coop, intervener, plaintiff in error.—Although, on some remote date, appellee's nine-acre block might not have been within the city of Gatesville, still, if, upon some date prior to 1897, the settlements had grown so thickly around him as to bring him within and make his nine acres a part of the town, or if by his own acts or the act of the city his said nine acres had been included in said city, he acquiescing and recognizing the jurisdiction and municipal control thereover, its rural character would thereby be lost and abandoned, and it would become impressed with the urban character, and would constitute his urban homestead. Lauchheimer v. Saunders, 27 Texas Civ. App., 484; Wilder v. McConnell, 91 Texas, 603; Foust v. Sanger, 13 Texas Civ. App., 410; Waggener v. Haskell, 13 Texas Civ. App., 630; Williams v. Willis, 84 Texas, 400; Keith v. Hyndman, 57 Texas, 425; Iken v. Olenick, 42 Texas, 195; Taylor v. Boulware, 17 Texas, 74.

Where the evidence is all one way, as in this case, and instead of sustaining, disproves plaintiff's case, the court is authorized and it becomes its duty to give peremptory instructions to the jury to find against him; failing in this, the evidence being insufficient to support the verdict and judgment for plaintiff, but on the contrary supporting inter-

vener's contention, a new trial should have been awarded by the trial court. Lauchheimer v. Saunders, 27 Texas Civ. App., 484; Wilder v. McConnell, 91 Texas, 603; Foust v. Sanger, 13 Texas Civ. App., 410; Posey v. Bass, 77 Texas, 512, and other authorities heretofore cited.

*H. N. Atkinson* and *McDowell & Sadler,* for appellee.—It was a material matter for the jury to determine whether Saunders' nine acres was urban or rural at the date of the purchase and occupancy of the 100 acres in 1868, and the duty of the court to give the jury appropriate instructions upon which to determine this issue. Lauchheimer v. Saunders, 27 Texas Civ. App., 484; Lauchheimer v. Saunders, 19 Texas Civ. App., 392; Bank v. Hulen, 21 Texas Civ. App., 285; Wilder v. McConnell, 91 Texas, 603; Mortgage Co. v. Abbott, 14 Texas Civ. App., 447; Posey v. Bass, 77 Texas, 512; Taylor v. Boulware, 17 Texas, 74.

If the nine acres and 100 acres was impressed with the rural homestead right on December 12, 1868, then it was presumed to remain rural homestead property until it is shown that its homestead character was changed. Same authorities.

If Saunders' homestead was rural on December 12, 1868, then it remained rural until April 2 and 9, 1897, unless the character of the nine acres was changed from rural to city or urban property by same having been taken into the city by such acts as would sever its rural character and appropriate it to urban purposes. Same authorities.

Rural homestead property does not become urban because it may be incorporated in a town by act of the Legislature, or because the city authorities may map it for taxing purposes, or because the owner may adopt the block number of the map in rendering for taxes. The city must do acts which appropriate the soil to city uses and purposes, such as laying it off upon the ground by running streets and alleys through it, cutting it up into lots and blocks, and actually laying its impress and authority upon the soil. Bank v. Hulen, 21 Texas Civ. App., 285; Wilder v. McConnell, 91 Texas, 603; Mortgage Co. v. Abbott, 14 Texas Civ. App., 447; Posey v. Bass, 77 Texas, 512; Taylor v. Boulware, 17 Texas, 74; Neeley v. Case, 32 S. W. Rep., 785; Bassett v. Missner, 30 Texas, 608; Nolan v. Reed, 38 Texas, 427.

It was the duty of the court to submit the question of homestead to the jury for determination. Lauchheimer v. Saunders, 27 Texas Civ. App., 484; Lauchheimer v. Saunders, 19 Texas Civ. App., 392; Bank v. Hulen, 21 Texas Civ. App., 285; Choate v. Railway Co., 90 Texas, 82; Lee v. Railway Co., 89 Texas, 583; and the other authorities cited heretofore in this brief.

The evidence in this case shows that December 12, 1868, J. R. Saunders owned a rural homestead of 109 acres of land upon which he has continuously resided with his family; that, while nine acres thereof has been since brought within the corporate boundaries of Gatesville, no act has ever been done by the city or Saunders changing the rural char-

acter of said nine acres, and therefore the verdict of the jury was justified by the law and the facts applicable to this case.

BROWN, ASSOCIATE JUSTICE.—The Court of Civil Appeals failed to make a statement of their findings of fact in this case, but the undisputed evidence establishes the following facts:

In 1859 J. R. Saunders bought nine acres of land situated in what is now the corporate limits of the town of Gatesville, but at that time the town was unincorporated. At the time Saunders bought the land he was the head of a family and has continued so to be down to the present time. He moved upon the land, established his home and used the same in such manner as to acquire the right of homestead under the Constitution. In 1868 Saunders bought 100 acres of land lying north and adjoining his nine acres, and from that time used the 100-acre tract in connection with his home place so as to establish a rural homestead upon the nine acres and the 100 acres, if, in fact, the nine acres was not embraced in the limits of the town of Gatesville at that time. In 1854 the town of Gatesville was located and plotted into a public square and ten blocks, which were divided into lots with four streets and alleys; two of the streets running east and west, one called North (now Main) Street and the other South (now Leon) Street. The North Street was actually laid out and opened to the west as far as Leon River, but South Street was not opened to the river at the time. North Street extended through the town and along the north side of the public square, passing in front and south of the nine-acre tract upon which Saunders resided. The nine-acre tract lay between North Street and Stillhouse Branch. The portion of the town that was laid into blocks and lots was about thirty feet higher than Saunder's home. A bluff runs around the north and west part of the town and Saunders' home was below the bluff. The residence of Saunders was built upon the nine acres so as to front south upon North street. From the square to Saunders' property was about 250 yards. The blocks which were laid out and plotted in 1854 did not reach as far as Saunders' property, and there was at the time no person living upon or occupying any of the lots between Saunders' home and the square, except one house which was to the east of Saunders upon the bluff. There was one settlement opposite to Saunders on the south side of North street and another settlement about 200 yards from him to the southwest of his place, and a third settlement west of him about 400 yards on the Leon River; the remainder of the surrounding lands and lots were unoccupied. At that time the population of the town was about 100.

In 1868, Saunders bought 100 acres of land lying on the north side of Stillhouse Branch and adjoining the nine-acre tract, which he had previously owned and upon which he then resided. The population of the town at this time was about six or seven hundred. Some additional settlements had been made around Saunders' home; one on the east, and two or three on the west and southwest of him. In 1897, at the time

plaintiff and intervener claim to have acquired their rights, the population of the town was about 2000, and the settlements had extended westward from the public square so as to occupy all of the lots and land lying between the public square and Saunders' home place, and all of the lots and parcels of land adjoining Saunders on the west, south and east, except one lot on the west. There was no vacant lot between Main Street and Stillhouse ·Branch. There was no house on the north of Saunders; his north line and the north line of the town were identical.

. The town was incorporated under the general laws of the State in 1870, and a plot of the town was made and recorded as required by law. This plot embraced the lots, blocks and streets laid out in 1854, and added others, laying out into blocks and lots, streets and alleys, all of the land embraced in the west part of the corporation, except some in the southwest portion and Saunders' nine acres. Upon this plot the nine-acre tract, the home of Saunders, was marked as block No. 61, and from that time on Saunders rendered his home for taxation in the city as well as to the State and county as block 61 in the town of Gatesville. Saunders continued to reside upon his home place, voted at elections held for city purposes, and held the office of alderman of the town for several terms. From 1857 Saunders pursued the business of merchant in the town of Gatesville until he became president of a bank, in which last place he continued until 1897, when he failed in business. No streets or alleys were ever opened through Saunders' nine-acre tract; it remains the same in shape as when he first purchased it.

Does the undisputed evidence in this case show that, as a matter of law, Saunders' home place was embraced within the town of Gatesville in the year 1897, when the plaintiffs in error claim to have acquired rights in the land outside of the town? Assuming that Saunders acquired a rural homestead on the nine-acre tract at the time he settled upon it in 1859 and that it continued to be a rural homestead up to the time he bought the 100 acres in 1868 or 1869, the facts are sufficient to establish Saunders' right to a homestead in the 109 acres at the latter date, and the law will presume that the facts which established this right continued until the contrary is shown. Wilder v. McConnell, 91 Texas, 604.

Whether the home be urban or rural depends upon the conditions and circumstances which surround it at the time the adverse right is asserted. The Constitution exempts homesteads, whether urban or rural, when it is established, but it does not guarantee that the character impressed upon the property at one time shall continue for the future. Wilder v. McConnell, before cited; Bull v. Conroe, 13 Wis., 233; Taylor v. Boulware, 17 Texas, 78; Iken v. Olenick, 42 Texas, 196.

When a rural homestead right exists in lands adjacent to a town or city, the mere fact of the extension of the corporate lines of that city or town so as to embrace the homestead or a part of it will not destroy the character of the rural homestead, nor impair the rights of the owner in the property as such. Wilder v. McConnell, before cited; Posey v. Bass,

77 Texas, 512. But should the town actually build and extend so as to include what was before in the country, it would then become in fact a part of the town, and by virtue of the Constitution the character of the homestead would be changed by the changed conditions from rural to urban without regard to the question of incorporation. Iken v. Olenick, before cited; Roberts v. Cawthon, 26 Texas Civ. App., 477; Watkins v. Abbott, 14 Texas Civ. App., 447; Williams v. Willis, 84 Texas, 298.

The undisputed testimony in this case shows that in the year 1897 the town of Gatesville had extended by actual occupancy of the different lots and parcels of land so that between the public square of that town and the home tract of J. R. Saunders there was not left a single vacant lot, and that all of the land lying between Leon street and Stillhouse Branch on the north was occupied by residences or by business houses. Every parcel of land which touched Saunders' property on either side except the north and all of the contiguous property surrounding him had become the homes of citizens of that town, and although his property had not been divided into lots nor had streets been opened up through it, his only outlet towards the town was over a public street that lay along his south line. His home was almost in the heart of a flourishing and prosperous town, and it would be difficult to find a case in which the progress and development of a growing town had more completely embraced property which was once recognized as rural in its character. We find, then, that by actual existence of a town around him Saunders' nine-acre tract was within the town of Gatesville. It was embraced in the town by the limits of its corporation; that is, by Stillhouse Branch on the north. Saunders recognized the property as being within the corporate limits and adopted a designation of his home place as block 61, using it as descriptive of the land in rendering his property for taxation to the city as well as to the State and county. He voted at elections in the town, held the office of alderman, and for nearly half a century carried on the business of merchant and banker upon the public square of the town. If while Saunders was engaged in the business of merchant, an execution had been levied upon his storehouse on the public square of Gatesville, the Constitution would have protected that business house from forced sale, because Saunders' residence was within the town of Gatesville, therefore he was entitled to the exemption of a business house in connection with his residence homestead; his claim could not have been resisted.

An application for writ of error was presented to this court in the case of Paris Exchange Bank v. Hulen, 21 Texas Civ. App., 285; but as presented the character of the homestead of Hulen was one of fact not established by the undisputed evidence to be urban or rural. The question was submitted to a jury and decided in favor of Hulen, and this court had no power to grant a writ of error in the case because it had no jurisdiction over the disputed question of fact.

In the case of Wilder v. McConnell, 91 Texas, 600, the findings of fact made by the trial court did not show that any change had been made in

the conditions and circumstances that surrounded the property after it had been embraced within the limits of the city of Weatherford. It did not appear that the town had extended so as to include what was before rural property, and this court held that the conditions existing at the time the boundaries of Weatherford were extended had not been shown to be changed, and that therefore the existing right of a rural homestead was not destroyed.

We conclude that the undisputed evidence in this case shows that in 1897, when the levy of the execution was made and when the deed of trust in question was executed to the intervener, the nine acres of land upon which Saunders resided was within the town of Gatesville and under the Constitution of the State was a homestead situated within a town, and the 100 acres involved in this litigation lay outside the limits of the town, therefore, it was no part of the Saunders homestead. It is therefore ordered, that the judgments of the District Court and of the Court of Civil Appeals be and the same are hereby reversed. There is no question made of the validity of the judgment and execution in favor of plaintiffs in error, Lauchheimer & Sons, and the injunction which was granted in this case on the 4th day of April, 1897, to prevent the sale of the said 100 acres under the said execution was based solely upon the ground that the land levied upon constituted a part of the homestead of Saunders and was not subject to sale. It is therefore ordered, that the injunction granted as aforesaid be and the same is hereby dissolved and set aside and the said 100 acres of land is held to be subject to the execution of the said Lauchheimer & Sons. But it appearing from the pleadings in this case that there is a controversy between Lauchheimer & Sons and the intervener, G. Y. Coop, as to the priority of their respective liens upon the land, and also that there is a controversy between the said Coop and Saunders as to whether the deed of trust includes the land, and the facts not being so presented that this court can dispose of those issues, it is ordered, that this case be remanded to the District Court to determine the priority of the liens of Lauchheimer & Sons and Coop, and the issue between Saunders and Coop. It is further ordered, that J. R. Saunders pay all costs of this court and the Court of Civil Appeals and all costs of the District Court already incurred except so much as was occasioned by the intervention of G. Y. Coop, which shall await the decision of the issue between Coop and Saunders.

*Reversed, rendered in part, and in part remanded.*