## COTTEN et al. v. FRIEDMAN.

(Court of Civil Appeals of Texas. Galveston. June 21, 1913.)

1. HUSBAND AND WIFE (§ 251*) — SEPARATE OR COMMUNITY PROPERTY.

Property acquired by a husband by descent was his separate property.

[Ed. Note.—For other cases, see Husband and Wife, Cent. Dig. § 894; Dec. Dig. § 251.*]

2. HOMESTEAD (§ 57½*) — ACTIONS — SUFFICIENCY OF EVIDENCE.

In trespass to try title by a wife against the purchaser upon the foreclosure of a mortgage given by the husband, where the homestead character of the land depended on whether the husband and wife were living in the country or in a town, city or village, evidence as to the character of the unincorporated place in which they lived held to make a question for the jury as to whether such land was a part of the rural homestead of the husband and wife.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 401; Dec. Dig. § 57½.*]

3. HOMESTEAD (§ 70*)—PROPERTY CONSTITUTING—SEPARATE TRACTS OR LOTS.

Where the 10-acre tract on which a husband and wife lived was situated in no town, city, or village, and they were therefore entitled to a rural as distinguished from an urban homestead, a 100-acre tract 4½ miles distant from the 10-acre tract cultivated by the husband and the products of which were used to support the family was a part of the rural homestead.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. §§ 100–103; Dec. Dig. § 70.*]

Appeal from District Court, Hardin County; L. B. Hightower, Judge.

Trespass to try title by Mazilda Cotten and husband against Max Friedman. Judgment for defendant, and plaintiffs appeal. Reversed and remanded.

V. A. Collins, of Beaumont, for appellants. Singleton & Nall, of Kountze, for appellee.

McMEANS, J. This is a suit of trespass to try title brought by appellant Mazilda Cotten, joined by her husband, W. F. Cotten, against the appellee, Max Friedman, to recover 100 acres of land, part of the Mary Smith survey in Hardin county. Under instructions from the court the jury returned a verdict in favor of appellee, upon which a judgment in his favor was duly entered, and from this judgment the Cottens have appealed.

[1] The land in controversy was acquired by W. F. Cotten by descent and was therefore his separate property. On February 19, 1908, he, to secure a debt owing by him to the appellee, mortgaged the land to appellee. The mortgage was afterwards foreclosed in the district court of Hardin county, and on December 6, 1910, the land was duly sold at sheriff's sale and purchased by appellee Friedman. Afterwards Mazilda Cotten, wife of W. F. Cotten, claiming that the land in question was a part of the rural homestead of herself and husband at the

time of the execution of the mortgage and at the time of the sale, and that the mortgage and sale were therefore void, brought this suit for its recovery, being joined herein by her husband pro forma.

[2] Prior to 1903 W. F. Cotten owned 100 acres of the Mary Hopkins survey and also 100 acres of the Mary Smith survey, and in addition to these owned two tracts of about 15 acres each. His residence was on the Hopkins, and he had lived on this survey for perhaps 25 years before the trial. In 1903 Cotten sold 80 of his 100 acres on the Hopkins to W. E. Brice and disposed of 10 acres to some one else, leaving him 10 acres, upon which he and his family resided and continued to reside down to the time of the trial. Up to 1903 his residence was in the country; the nearest house to him being a half mile distant. The town of Saratoga then consisted of only a few houses, scattered around the springs at that place. In 1903 oil was discovered in that locality, and Brice, who had purchased 80 acres from Cotten, laid his tract off into a town site, with lots, blocks, streets, and alleys, and a plat or map thereof was duly filed and recorded in the county clerk's office of Hardin county. The town site as thus surveyed lay to the north, east, and west of Cotten's 10-acre tract but did not extend south of it. Immediately north of Cotten's tract, and running east and west, was Third street, according to the plat, and next north and running parallel with it is Main street. All the business houses in Saratoga, of which there are quite a number, are built on Main street. People began building houses in the town site, and in 1908 the population of Saratoga was about 1,000. The testimony seems clear that the town-site survey west of Cotten is occupied by the Texas Company, and it has it inclosed, and there are two or three residences in the inclosure belonging to that company. To the east there are quite a number of houses which were built without regard to the location of lots, blocks, streets, or alleys; in fact, no streets or alleys are laid out on the ground in this part of the town site, although they appear on the recorded plat. These houses are small, unstable, paper roofed and generally occupied by "squatters." The testimony is in conflict in regard to whether there are any houses south of Cotten's place; two or three witnesses testifying there were and two or three that there were not.

The attorney who drew the mortgage which was afterwards foreclosed, and under which the land was sold, testified that Cotten then told him that the land in controversy was not his homestead. "My home is here in Saratoga and I have never claimed the 100 acres as my homsestead." He further testified that the town at that time had a population of over 1,000 people. "There were a number of stores, dry goods, grocery stores, saloons, millinery store, two drug stores, several hotels and boarding houses, a machine shop, bank, and post office." Cotten cut into lots about two acres of his 10-acre tract lying immediately south of Third street, and sold these, and houses have been built on all or some of these lots. The town of Saratoga has never been incorporated.

[3] The 100 acres in controversy is situated some 4½ miles from Cotten's residence. He began cultivating it or a part of it about 9 years before the trial and continued to do so every year, using the products to support his family. The character of its use has been such as to make it a part of his rural homestead, if he is entitled under the facts to an exemption of a rural homestead, and this depends on whether his residence is situated in a town, city, or village, or in the country.

Under substantially these facts the court, regarding the proof as insufficient to raise the issue of the land in controversy being the rural homestead of appellants, instructed the jury to return a verdict for appellee, and this charge is assailed by appellants' first assignment of error. We think the assignment must be sustained.

Whether the land in controversy was exempt from forced sale depends on whether or not it was a part of appellants' rural homestead, and this depends on whether appellants' residence on the 10-acre tract was an urban or rural homestead. We think the facts, when viewed in the light of the following authorities, were sufficient to take the case to the jury: Bank v. Hulen, 21 Tex. Civ. App. 285, 52 S. W. 278; Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145; Posey v. Bass, 77 Tex. 512, 14 S. W. 156; Watkins v. Abbott, 14 Tex. Civ. App. 447, 37 S. W. 252; Taylor v. Boulware, 17 Tex. 74, 67 Am. Dec. 642; Laucheimer v. Saunders, 97 Tex. 137, 76 S. W. 750.

The testimony was not sufficient to compel a finding that the land at the time of the execution of the mortgage and the foreclosure sale was the rural homestead of appellants, and their second assignment of error, in which they contend that it was, is overruled.

For the error indicated, the judgment of the court below is reversed, and the cause remanded.

Reversed and remanded.