SAMUEL J. TAYLOR v. OLIVER T. BOULWARE.

Where a man and wife acquired a homestead, and the wife died, and there were no children, but the husband continued to occupy the premises as before, with his slaves, hirelings and a niece and her husband, who came to live with him after the wife's death, it was held that the homestead right continued under the constitution.

A temporary absence, without any proof of intention to change residence, does not amount to an abandonment of a homestead.

We are not disposed to question the power of the Legislature to extend the limits of the corporation of the town of Marshall ; nor to question, that after the plan or plot of the town has been extended, corresponding with the boundaries so authorized to be extended, a homestead falling within such extension, though acquired before it was done, would become subject to the limitations prescribed by the Constitution to a town homestead.

Where the limits of a town are extended by Act of the Legislature, so as to include a country homestead, the latter does not thereby immediately become a town homestead ; not until the plan or plot of the town is extended accordingly, either by buildings, or by the survey, or at least an ordinance establishing streets, &c.

Appeal from Harrison.   Tried below before the Hon. William W. Morris.

Trespass to try title, brought by appellee against appellant, for a tract containing sixty-six and 58-100th acres, described as about three quarters of a mile north-east from the centre of the public square of the town of Marshall.

The plaintiff had purchased the land in controversy in 1848, and not finding a suitable building place upon it, purchased five or six acres adjoining, in the direction of the town.   Here he built his dwelling house, and principal improvements ; but the horse lot, slaughter pen, corn crib, brick yard, part of the negro houses and branch of water for every day use of the family were on the land in controversy.   From this time on the plaintiff occupied and cultivated both tracts as his homestead ; no part of the land being within the limits of the town.   In 1850

his wife died ; had no children. Plaintiff continued to occupy and cultivate the land as before, with his negroes. A Mr. McAlister and his wife, the latter a niece of the plaintiff, lived with him from the early part of 1851, having no other home, using his furniture, eating at his table, as a part of his family (in the language of the witness.) In July, 1851, the plaintiff went to Mexico and did not return until the Spring of 1852 ; when he left he stated that he was going to South Carolina. He, however, left every thing to go on, and every thing did go on, just the same as when he was at home ; and there was no evidence of any intention to change his residence.

The defendant claimed by purchase at sheriff sale, made on the 6th February, 1852, under executions issued on judgments recovered against the present plaintiff, at the Spring Term, 1851, of Harrison District Court, paying therefor at the rate of $8 10 per acre. McAlister was present at the sale and forbid it, claiming the land as the homestead of the plaintiff. On the 11th day of February, 1850, an Act of the Legislature, entitled An Act to Incorporate the Town of Marshall, was passed, in which the limits of the town were defined to be one mile square, of which the courthouse of the county of Harrison should be the centre. It was proved that the limits thus defined included all of the second purchase on which the dwelling house stood, and which was not in controversy, and in addition thereto about three acres and a quarter of the first purchase, the same to recover which the suit was brought. The negro houses and crib, described as on the land in controversy, were on these three and a quarter acres ; they being in the same enclosure with the homestead. Both tracts of land, considered as one, came to a sharp angle towards the town ; the dwelling house stood immediately within the point. It was proved that the land was all cleared up but an acre or two. Witnesses who appeared from the statement of facts, to speak in the present tense, proved the value of the land and improvements within the town limits, to be from fifteen hundred

to two thousand dollars. There was no evidence directly to the point, whether the town of Marshall had passed any ordinances respecting streets ; nor as to how near to the property in controversy the houses of the town approached ; but it was apparent from the general course of the testimony, that the limits of the town had not been surveyed and marked, and that the house of the plaintiff was beyond the body of the houses. No point was made below upon this subject.

The Judge charged the jury that the term family means a collection of persons living at or in the same mansion, having a common governor or head, on whom they are in some way dependent, and by whom they are provided for and controlled ; and that the fact that all of such persons except the owner are slaves, does not alter the question ; and that where a homestead of two hundred acres, or less, in the country, is once acquired, the extension of town limits over part of it, would not curtail the right.

The defendant asked the Judge to charge the jury, that if the plaintiff had no wife, child or ward, at the time of the levy and sale, he was not the head of a family.

That if the land sued for adjoined the corporate limits of the town of Marshall, and the premises where the plaintiff lived were within the town, such premises would constitute his homestead, and he could not claim as part of his homestead the land lying without the limits of the town.

That if they found from the testimony, that the plaintiff was the head of a family at the time of the sale, and that his residence was within the limits of the town of Marshall, and that the part of the land inside of the town, with the improvements, was worth two thousand dollars, then the defendant could recover the land without the limits of the town.

The plaintiff had verdict and judgment for all the land.

C. M. Adams, for appellant, cited U. S. Dig. 4th Vol. 422 ; 9 B. Mon. 331—350.

*Marshall & Wigfall,* for appellee, cited The State v. Sulli-
van, 9 Tex. R. 156 ; Sampson and Keene v. Williamson, 6 Id.
102 ; Wood v. Wheeler, 7 Id. 13 ; C. C. La. Tit. 24, Art. 16.
There was no attempt to prove *user* under the Act of incorpo-
ration. There does not appear to have been any effort on the
part of the town authorities to extend its jurisdiction to the
new limits under the Act of 1850. The original limits were
one half mile square.

LIPSCOMB, J. From the statement of facts, there is no ques-
tion that the whole of the land sued for in this case was, in
1848, the homestead of Boulware, the appellee in this Court
and plaintiff in the Court below ; and it is equally clear that
he never relinquished or abandoned it, but that it was his
homestead at the time of the sale by the Sheriff, under which
appellee became the purchaser and obtained possession. The
death of the wife whilst it was his homestead, and his having
no children, did not destroy its distinctive character of a home-
stead, he continuing to reside there with his slaves, hirelings
and niece, and her husband, Mr. McAlister. If he had been
without servants or any one with him after the death of his
wife, it would still have been his homestead so long as it con-
tinued to be his residence, and protected from a forced sale.
(Wood v. Wheeler, 7 Tex. R. 13.) His temporary absence for
six or eight months, leaving his slaves and McAlister as agent,
and no new residence acquired, could not amount to a forfeit-
ure of his homestead rights.

At the time the homestead was acquired, the protection from
a forced sale would have included all the land sued for in this
suit, because it did not exceed two hundred acres, and was in
the country, not included in city or town ; and if the case stop-
ped here, it would be clearly with the appellee. But by the
2nd Section of the Act incorporating the town of Marshall,
passed in February, 1850, the limits of the town were extend-

ed so as to include within its limits about three and one half acres of the land, and on this land, so included, was the dwelling of the appellee, leaving out some out buildings. This extension of the town was before the Sheriff's sale, at which the appellant became the purchaser. It does not appear that there had been anything done by the corporate authorities in laying out streets or squares on the land of the appellee. The charter directed that the town should be one mile square, taking the courthouse as the centre of the square. These limits had never been surveyed or marked out, and it had to be matter of proof on the trial that the homestead was within the limits. The County Surveyor proved that after the commencement of the Term, he had, for his own satisfaction, run a line one half mile from the courthouse, and found that the three and a half acres before mentioned were included within the town limits. Under such circumstances can the land, so included, on which the residence of the appellee is situated, be regarded as a lot or lots in a town, and restrict his homestead privilege to that quantity of land? The constitutional protection of the homestead from forced sale, is found in the 22nd Section of the General Provisions, (Hart. Dig., p. 73,) and is as follows : 'The homestead of a "family, not to exceed two hundred acres of land, not included "in a town or city, or any town or city lot or lots in value not "to exceed two thousand dollars, shall not be subject to forced "sale for any debts hereafter contracted," &c. We are not disposed to question the power of the Legislature to extend the limits of the corporation of Marshall ; nor to question that after the plan or plat of the town had been extended, corresponding with the boundaries so authorised to be extended, a homestead falling within such extension, though acquired before it was done, would work a change in the character of the homestead, from a country to a town homestead. But we do question the position, that the mere act of extending the corporate limits, by the Legislature, without any act of the corpo-

ration to give an extension of the plan of the town to those limits, can change the character of the homestead. The protection of the homestead from forced sale was manifestly a favorite object with the Convention, and the constitutional provision, intended to secure that object, has been regarded as entitled to liberal construction. The term lot or lots, used in the Constitution, must be taken and construed in the popular sense of those terms ; and, when so used, never would be considered as embracing land within the jurisdictional limits of the corporation, not connected with the plan of the city. It might be important to the administration of the police laws of the corporation, that such lands and those who owned or occupied them, should be within its jurisdiction ; but, until streets had been extended through the land connecting it with the plan of the town, the land could not be called a lot of the town. It is admitted that the term lot is sufficiently comprehensive to embrace any piece or parcel of land, and the land in controversy might be so designated, but not because it was within the corporate limits of a town. There is a large plantation commencing within three hundred yards of the courthouse in which we are now holding Court. That plantation may or may not be within the jurisdictional limits of the town of Tyler ; but if it is, no one would ever think of designating it as a town lot in the town of Tyler.

There is another view which fortifies the conclusions to which we have arrived ; that is, that it is impossible to know how the homestead will be affected by extending streets through it, and connecting it with the plan of the town. It may be so materially affected as to render it of little or no value as a homestead ; and if it should be held that it was cut off from and separated from the lands without the jurisdictional limits of the corporation, the owner would have an equity that should be secured to him. This, perhaps, could only be done by allowing him to make his homestead on the land without the corporate jurisdiction of the town. This we regard as a strong

reason why his homestead should not be disturbed, under the circumstances presented in this case. It is not regarded as material to notice the points presented by the appellant's counsel, as to the rulings of the Court more particularly, because we believe that they are all embraced in the views we have expressed. We find nothing in any of them that could change the result. The judgment is therefore affirmed.

Judgment affirmed.

WHEELER, J., did not sit in this case.