GEORGE WILDER & COMPANY v. ISAAC McCONNELL.

No. 642.—Decided March 31, 1898.

**1. Homestead—Rural or Urban.**

In determining whether a homestead is rural or urban within the meaning of art. 16, sec. 51 of the Constitution, whether it is within the corporate limits of a town or village, or not, is not of controlling influence. (P. 603.)

**2. Same—Change From Rural to Urban.**

The Constitution exempts the homestead as it is at the time of its designation, but does not guaranty that its character as rural or urban homestead shall continue in the future,—the exemption existing before its inclusion within the corporate limits by their extension being presumed to continue until it is shown that it did not originally exist or that such acts had been done, either by the owner or by the city, as to change its character from a rural to an urban homestead. (P. 604.)

**4. Same—Question of Fact.**

The head of a family designated as his homestead a four-acre tract outside an incorporated town, building thereon a residence and two tenant houses; the corporate limits were afterwards extended so as to include the tract, and streets were opened and improved along its boundaries. Held, that whether the homestead had lost its rural character, and the tenant houses and lots their exemption, was a question of fact, on which the Supreme Court was bound by the finding of the lower court. (Pp. 601 to 605.)

ERROR to the Court of Civil Appeals for the Second District, in an appeal from Parker County.

Writ obtained by Wilder & Co. from a judgment affirming an injunction obtained in the trial court at suit of McConnell against the sale of his homestead under execution.

*H. S. Moran,* for plaintiff in error.—The court below erred in holding that appellee's homestead was rural and that the real estate levied upon was a part of a rural homestead, because both the allegations of the bill and proof showed that it was within the corporate limits of the city of Weatherford in fact, and that its physical features, subdivisions, surroundings and uses, were essentially those of an urban homestead, and it had none of the features of a farm, or rural homestead. Constitution, art. 16, sec. 51; Rev. Stats., 2396; Taylor v. Boulware, 17 Texas, 74; Posey v. Bass, 77 Texas, 513; Wagner v. Haskell, 35 S. W. Rep., 711; Watkins v. Abbott, 37 S. W. Rep., 252; Bassett v. Mesner, 30 Texas, 601; Rogers v. Ragland, 42 Texas, 441; Iken v. Olenick, 42 Texas, 197; Keith v. Henderson, 57 Texas, 429; Williams v. Willis, 84 Texas, 400.

*John W. Squyres,* for defendants in error.

BROWN, ASSOCIATE JUSTICE.—This suit was brought by the appellees, Isaac McConnell and wife, on January 27, 1897, to enjoin the sale of a lot with dwelling house and other improvements thereon, situated in the city of Weatherford, levied on by the constable by virtue of an execution issued on a judgment of a Justice of the Peace in favor of George Wilder & Co. against Isaac McConnell for $55.85 and costs. The petition for injunction set forth that the lot was part of McConnell's homestead.

The case was tried by the court without a jury, and judgment was rendered in favor of appellees perpetuating the injunction; and from this judgment Wilder & Co. appealed to the Court of Civil Appeals, complaining that the evidence was not sufficient in law to sustain the same.

No conclusions of fact were filed by the court, but the following recital appears in the judgment: "And the court having heard the pleadings of the parties read and having heard the evidence and argument of counsel, finds and holds that the land in controversy in this suit is a

part of the rural homestead of plaintiffs, and that the temporary injunction heretofore granted in this cause should be perpetuated."

The Court of Civil Appeals found the following conclusions of fact:

"The lot in controversy is 75x150 feet,. and had, at the time of the levy, a dwelling house with four rooms and a front porch, fronting to the west, on a public street of the city of Weatherford, known as Bois d'Arc Street. It was fenced off to itself, and in the rear thereof was a stable and shed, and a privy, and back of the stable lot was a garden spot. In fact, this lot and one of similar size, arrangement and improvements adjoining it on the south were fenced off from each other and from the lot on the north, on which appellees' residence, stables, barns, lots and other necessary improvements were located, and where they at the time resided, claiming all the lots mentioned as their homestead.

"Their homestead, as claimed, was a four-acre block, which, together with a five-acre block adjoining it, was by them, in 1890, designated as their homestead, under the provisions of our Revised Statutes (article 2403); and in the spring of 1893, having sold their five-acre block, appellees built the three houses and the improvements mentioned on this four-acre block, dividing each lot off by partition fences to itself. On the two lots on the north side of the four-acre block, being each 75 feet wide, they placed their dwelling house, barns, lots, well, etc., with the purpose of residing thereon; while on the two lots 75 feet wide each, they placed the dwelling houses and other improvements named, for the purpose of renting them to tenants and applying the rentals to their support. They were old people, the husband being 78 years of age, and had to rely upon the income produced by this property, it seems, for their support and maintenance.

"These buildings and improvements were all placed on the four-acre block prior to March 1, 1893, and while it was outside the city limits of Weatherford, and while the block constituted their rural homestead. Afterwards, however, on April 6, 1893, the south boundary line of the city was extended, without their request or consent, to the south and east lines of the four-acre block, so as to place this four-acre block exactly in the southeast corner of the city corporation. After the city lines were thus extended, the city proposed to them that if they would set back their fence 20 feet from their west boundary, and 6 feet from their south boundary, it would grade and gravel streets on their west and south boundaries, and this they agreed to; and thus Bois d'Arc Street on their west and Akard Avenue on their south were opened and established, and graded and graveled.

"Since this block was taken within the corporate limits of the city, down to the time of the levy, no changes had been made in the lines and fences of the lots, but the appellees continued to rent the two lots on the south of the block whenever they could get tenants, and used them for no other purpose. The tenants who occupied the lot levied upon, however, in many instances, paid the rents by manual services in

assisting appellees in their household work and work about their garden, lots and stables.

"The appellant's judgment and execution were valid and subsisting claims against Isaac McConnell, and were levied on one of the south lots,—the one lying next to appellees' residence lot on the south, being 75x150 feet,—whereby they have fixed a valid lien on said lot, unless it is part of appellees' homestead."

The designation of homestead made by McConnell and wife and referred to in the finding of facts filed by the Court of Civil Appeals describes the land so designated as a homestead and now in controversy, as follows:

"The State of Texas,
"County of Parker.

"Know all men by these presents, that we, Isaac McConnell and Gertrude S. McConnell his wife, of said county and State, have this day designated and set apart and do hereby designate and set apart as our homestead the following designated tract or parcel of land situated in the County of Parker, the State of Texas, to-wit: * * * Also all that certain lot, parcel or tract of land lying and being situated in the southeast portion of the city of Weatherford and being a part of the J. A. Yeoman survey," giving the metes and bounds of the tract.

The Court of Civil Appeals found that "at the time of the trial Zeb Burton lived on the lot appellees conveyed to him for digging the well, and at that time Will Clinton and Mrs. Lewis lived east of Burton's, and people lived all around the homestead block, but the record nowhere discloses how near they lived to it nor does it show when they built their houses."

Section 51, of article 16, of the Constitution, so far as applicable to the question before us, reads thus: "The homestead, not in a town or city, shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village shall consist of lot or lots not to exceed in value $5000 at the time of their designation as the homestead, without reference to the value of any improvements thereon." When it has been ascertained whether land claimed to be a homestead is in a city or village, or in the country, the Constitution as above quoted furnishes the rule by which to determine the extent of the exemption. In arriving at a conclusion as to whether the land is located within a city, town or village, the fact of incorporation or not is not of controlling influence, and will not of itself determine that the land is or is not within the limits of a city or town. Posey v. Bass, 77 Texas, 512. The property in question may be within the corporate limits of a town or city and still be a rural homestead within the meaning of the Constitution, or it may be actually within the limits of a town or village not incorporated and be an urban homestead in its character. Williams v. Willis & Bro., 84 Texas, 398; Iken & Company v. Olenick, 42 Texas;

197; Land & Mortgage Co. v. Abbott, 37 S. W. Rep., 252; Neeley v. Case, 32 S. W. Rep. 785; Taylor v. Boulware, 17 Texas, 74.

The Legislature had the power to enact the general law of this State under which the corporate limits of the city of Weatherford were extended, and when authorized by that law the boundaries of a town or city may be so enlarged as to include agricultural lands without the consent of the owner, if such land be so situated that it can be lawfully added. Blessing v. City of Galveston, 54 Texas, 641; Washburn v. City of Oshkosh, 60 Wis., 453; Wade v. Richmond, 18 Grat., 583; McCallie v. Chattanooga, 3 Head, 317; Stoner v. Flournoy, 28 La. Ann., 850. And such city may lay out streets, alleys, and all public highways necessary for the public convenience, and to accomplish this purpose may condemn land (although it be a homestead) without distinction as to whether it was embraced in the limits of the original incorporation or was subseqently included therein by the extension of its limits. Rev. Stats., arts. 419 and 548.

Since the city had the power to embrace the homestead of McConnell within its limits against the wishes of the owner and also the power to lay out streets and alleys over it and thereby convert it into town lots or blocks, it follows that a rural homestead may in that manner be changed into a city or town homestead without the consent of the owner, and that being so changed the extent of the exemption must be determined by the terms of the Constitution applicable to it in its condition when the question arises. The Constitution exempts the homestead as it is, but does not guarantee that its character as a rural or urban homestead shall continue in the future. Bull v. Conroe, 13 Wis., 233; Taylor v.Boulware, 17 Texas, 78; Iken v. Olenick, 42 Texas, 196.

The undisputed evidence in this case shows that McConnell and wife owned the land in controversy, occupied it as a homestead, and improved it by placing several houses upon it, for rent, before the corporate lines of the city of Weatherford were changed, which made a prima facie case of rural homestead existing before and at the time the corporation lines were extended beyond it. The exemption being thus shown to have existed would be presumed to continue until evidence was adduced by the plaintiff in error which would show that the exemption either did not in fact exist before the land was taken in by the corporation, or that since it had been so embraced within the corporate limits of the town such acts had been done, either by the owner or by the city, as to change its character from a rural to an urban homestead. Posey v. Bass, 77 Texas, 512.

The writ of error was granted in this case because we believed that the undisputed facts showed that the lot in controversy was, as a matter of law, no part of the homestead of McConnell and wife at the time it was levied upon. However, upon a careful examination of the case we have come to the conclusion that it is a question of fact whether the property was at the time rural or urban, within the meaning of the Constitution, and that the testimony is not of such conclusive character

against the claim of homestead as would justify this court in holding that there was no evidence to support the finding of the trial court "that the land in controversy in this suit is a part of the rural homestead," although we might come to a different conclusion from the evidence.

We therefore affirm the judgments of the District Court and Court of Civil Appeals.

*Affirmed.*