FIRST NAT. BANK OF LONE OAK v.
LITCHFIELD et ux.

(Court of Civil Appeals of Texas. Texarkana. Feb. 13, 1912. On Motion for Rehearing, Feb. 29, 1912.)

1. HOMESTEAD (§ 60*) — URBAN OR RURAL HOMESTEAD—CORPORATE LINES.

In determining whether a homestead is urban or rural, the corporate line does not control, but should be considered as a material fact when the property has been acquired after the city limits have been established.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 89; Dec. Dig. § 60.*]

2. HOMESTEAD (§ 63*)—PROPERTY CONSTITUTING HOMESTEAD—URBAN OR RURAL PROPERTY — CONSTITUTIONAL PROVISIONS—"LOT OR LOTS."

Const. art. 16, § 51, provides that a rural homestead shall consist of not more than 200 acres, and that an urban homestead shall consist of a "lot or lots" not to exceed in value $5,000. Land, designated as a lot in a particular block in the city plan, and within the limits of a city, was purchased and used for a residence in connection with the owner's business as a merchant, and afterwards the owner purchased land adjoining his residence property, but separated from it by the city's limits as generally recognized, which he used for pasturing the family horses or cattle, and for raising products for home consumption; both lots being valued at less than the constitutional limit for urban homesteads. The city exercised no jurisdiction over such tract and levied no taxes thereon, nor was it rendered for city taxation. Held, that the term "lot or lots" must be taken in its popular sense, and did not embrace land within the limits of the corporation not connected with the plan of the city; that the original homestead was urban in character, and the later acquisition was rural; and that, as there could be no blending of urban and rural homesteads, the tract last purchased was not a part of the

owner's homestead, and hence was subject to foreclosure under a deed of trust.

[Ed. Note.—For other cases, see Homestead, Cent. Dig. § 91; Dec. Dig. § 63.*

For other definitions, see Words and Phrases, vol. 4, pp. 3327–3336; vol. 8, p. 7679; vol. 5, pp. 4239–4245; vol. 8, p. 7710.]

Appeal from District Court, Hunt County.

Action by the First National Bank of Lone Oak against M. F. Litchfield and wife. Judgment for defendants, and plaintiff appeals. Reversed, and judgment entered for plaintiff.

Evans & Carpenter and S. S. Frazer, for appellant. Looney & Clark, for appellees.

HODGES, J. On February 15, 1906, M. F. Litchfield, one of the appellees, executed and delivered to the appellant his promissory note for the sum of $2,572.10, and for the purpose of securing the payment of the note Litchfield, joined by his wife, on the same day executed a deed of trust upon 22.7 acres of land. The note was not paid at maturity, and on February 25, 1908, this suit was instituted by the appellant to recover judgment thereon, and for a foreclosure of its lien on the land described in the trust deed. Besides a general denial and a discharge in bankruptcy, Litchfield and wife alleged in their answer that the land was at the time the trust deed was executed a part of their homestead, and for that reason the mortgage was void. Whether or the not the land was the homestead of the appellees was the only controverted issue presented on the trial in the court below, and is the only one involved in this appeal.

From the facts which seem to be uncontroverted, it appears that the town of Lone Oak was incorporated under the general law about 1890, to include an area one mile square with a place designated as Hunt's livery stable as the central point. The boundaries as thus fixed included the land in controversy, and also a three-acre lot upon which Litchfield's residence was situated, and which will be referred to as the "Dowell lot." After the incorporation, objection was made by some of the owners of property lying near the limits of the corporation to paying taxes upon what they claimed were agricultural lands, and in 1896 it appears that the city council of Lone Oak adopted an ordinance by which the corporate limits were changed so as to exclude such lands. The land in controversy lay outside of the line made by this change. It is also shown that Litchfield purchased the Dowell lot, which was a tract of three acres situated inside of the corporate limits of Lone Oak, about the year 1900, established his residence thereon, and has since occupied the same continuously up to the time of the trial as his family residence. Some time after establishing his residence on the Dowell lot he purchased the land in controversy, which is referred

to in the testimony as the Wallace tract, which lies contiguous to and immediately north of the lot upon which his residence was situated, being separated therefrom by a fence.

The findings of the jury may be summarized as follows: When Litchfield bought and moved to the Dowell lot of three acres, he engaged in the mercantile business in the town of Lone Oak. He then established the homestead of his family upon that lot, and was so using it at the time he purchased the land in controversy some time thereafter, and at the time the deed of trust was executed. When he executed the deed of trust, Litchfield was also using a lot owned by him in the business portion of the town of Lone Oak as a place for conducting a mercantile business. A map introduced in evidence shows that the town of Lone Oak had been laid off into streets, blocks, and lots, on which Litchfield's residence lot of 3 acres was designated as lot 8, block 25. This map also shows that the block upon which Litchfield's residence is situated is in the extreme northeast portion of the residence part of the town and near the corporate limits; that the remainder of the town lying south and west from those lots was subdivided into streets and alleys, lots and blocks. It was 350 yards from where Litchfield resided to the business part of the town. The intervening territory, with the exception of one acre, was built up and inhabited by people living on the lots at the time the deed of trust was executed. All the land lying north and east of Litchfield's residence lot, including the land in controversy, was designated as farm land. Litchfield's nearest neighbor on the west was 100 yards distant, and the nearest on the south was 150 yards away; a vacant lot intervening in each instance between the neighbors referred to and Litchfield's residence. The generally recognized north boundary line of the corporate limits of the town ran between the lot upon which Litchfield had his residence and the land in controversy. Litchfield had never lived on any part of this 22-acre tract, but used it as farm property, which consisted of pasturing stock and raising a few articles of agricultural produce. It was never rendered for taxes by him in the town. In response to an instruction that the use of a tract of land for pasturing the family horses or cattle, or for the purpose of raising oats, corn, millet, potatoes, or other products for home consumption, was a use for home purposes, the jury found that Litchfield, at the time of executing the deed of trust, was using the land in controversy "for home purposes." The aggregate value of all the different lots owned by Litchfield, including the 22 acres, was less than the constitutional limit for urban homesteads.

Upon these findings the appellant asked for judgment for a foreclosure of its mortgage. The court found that Litchfield had been adjudged a bankrupt, and the debt was discharged, and judgment generally was entered for appellees. The only assignment of error which need be considered is that which assails the action of the court in refusing to foreclose the lien created by the trust deed.

The sole question presented is: Are the facts sufficient to show, as a matter of law, that the land in controversy was not the homestead of the appellees at the time the deed of trust was given? If the homestead character of the property was to be determined by any issues not embraced in the answers returned by the jury, and upon which the court in making up his judgment was required to pass, then we cannot say that the judgment was erroneous, unless it appears from the uncontroverted evidence relating to those issues that the facts do not support the conclusion reached. Section 51 of article 16 of the Constitution is as follows: "The homestead not in a town or city shall consist of not more than two hundred acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value five thousand dollars at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." Litchfield was entitled to claim the premises upon which he resided either as an urban or a rural homestead. If it can be said from the facts found by the jury and established by the evidence that this lot was part of a rural homestead, then it follows that he was entitled also to extend that claim to other rural property such as the land involved in this suit. But if the facts show that his residence lot at the time he acquired it was an urban homestead, then he would have no right to so extend his homestead claim unless it can be said that the 22-acre tract was also urban property. A homestead cannot be part rural and part urban; it must be exclusively one or the other. There can be no blending of the two. Foust v. Sanger, 13 Tex. Civ. App. 410, 35 S. W. 404. The character of Litchfield's homestead rights —that is, whether urban or rural—must be determined by that of the lot upon which his residence stood when first established, for other tracts of land thereafter acquired and claimed as a part of the homestead could become such only in the event they can legally be blended with the residence lot. When Litchfield established his residence upon this property, it was within the corporate limits of the town of Lone

Oak and was designated upon the town plat, which the jury found was correct, as lot 8, block 25. He was at the time engaged in the mercantile business. Had any question then been raised as to whether this was an urban or a rural homestead, we think but one answer could have been given. It was within the territorial limits of the incorporated town, was platted on the map, and connected with the town proper. The owner used it as a convenient residence for carrying on his principal business, which was that of merchandising, and at the same time owned another lot and an established business in the central portion of the town. It is true he testifies that he was engaged in farming in connection with his mercantile business, but he states that his principal avocation was that of a merchant; that his agricultural pursuits consisted mainly of having his children, after they got old enough, cultivate a few acres of land on the 22-acre tract in controversy.

[1] It has been held by our Supreme Court that, in determining whether or not a homestead is urban or rural, the corporate line does not control. Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145. But it has also been held, and we think with much reason, that the corporate line should be considered as a material fact in determining that question when the property has been acquired after the city limits had been established. Allen v. Whitaker (Tex.) 18 S. W. 160.

[2] We have here, then, this situation: Litchfield, desiring to engage in a mercantile pursuit, acquires a business lot within the central portion of the town, also his residence within the corporate limits proper and upon land which the map shows has been divided into blocks and lots and designated as a part of the town proper. This, we think, is sufficient to show that at the time of its acquisition the three-acre lot upon which Litchfield established his home was urban property.

If this be correct, the next question that presents itself is: Was the 22-acre tract also urban property? If this tract of land, though used in the same manner for the benefit of the family as that shown by the evidence, had been situated several miles distant in the country, there would have been no question about its being properly classed as rural property. The only fact, then, which is entitled to any special weight as tending to show that it is urban property, is its location near to, or possibly within, the corporate limits of the town of Lone Oak. It is really unimportant whether the land was within or without the corporate limits of Lone Oak as these were originally established. The evidence is undisputed that before the purchase of the Wallace tract by Litchfield there had been an effort made by the city council to exclude that tract, with other lands not used for city purposes, upon the ground that they were rural property and should not have been included within the town limits. Such changes in the corporate limits of cities and towns seem to have been authorized by an act passed in 1895. See Acts of 1895, p. 178. This act is incorporated in Sayles' Revised Civil Statutes as article 386d, under title 18, chapter 1, relating to cities and towns. The caption of the act does not indicate that it was intended as an amendment to any particular chapter, or title, of the present codification of laws. It is as follows: "An act to enable the mayor and city council of any town or city to discontinue uninhabited territory as a part of any city or town." The emergency clause provides that "whereas, there is now no law authorizing *town and city corporations* organized under the general law to discontinue as a part of such corporation uninhabited territory," etc. This language seems to have no special reference to any artificial classification of municipal corporations embraced in the terms "cities and towns" and "towns and villages." The reasons for its enactment are just as potent in the case of towns and villages as in that of cities and towns which may have included territory not used for corporate purposes. But it is unnecessary to decide whether this statute was applicable to all municipal corporations formed under the general laws embraced in title 18 of the Revised Civil Statutes. The evidence does not show under what chapter or provision of the general laws the town of Lone Oak was incorporated. It is shown that the town authorities undertook to exercise the powers conferred by the act of 1895. The ordinance was introduced in evidence without objection, and has become a part of the record of the case to be considered along with other testimony. There is nothing in the record to impeach its weight or destroy its evidentiary value. Its consideration became a part of the duty of the trial court in making his findings. But aside from the question as to the validity of the ordinance referred to as affecting the location of the corporate limits, the jury found that this land was outside of the limits as generally recognized. It was also shown without dispute that the city officials exercised no jurisdiction over that territory, and that no city taxes were levied and collected upon those lands. The evidence also conclusively shows that this tract was used exclusively for rural purposes. "The term 'lot or lots,' used in the Constitution, must be taken and construed in the popular sense of those terms, and when so used never would be considered as embracing land within the jurisdictional limits of the corporation, not connected with the plan of the city." Taylor v. Boulware, 17 Tex. 74, 67 Am. Dec. 642.

The facts left no issue which the court could properly decide in favor of the homestead claim after the findings made by the jury. If the residence lot was urban and the

land involved in this suit was rural, the latter formed no part of Litchfield's homestead and was therefore subject to the deed of trust. Lauchmier v. Saunders, 97 Tex. 137, 76 S. W. 750.

There being no issue of fact to be developed on another trial, the proper judgment will be here entered for the appellant, foreclosing the lien evidenced by the deed of trust shown to have been executed upon the land in controversy.

### On Motion for Rehearing.

In their motion for rehearing the appellees call attention to some errors made in our findings of fact in the original disposition of the case. It is insisted that we erred in finding that Mrs. Litchfield had signed the deed of trust, and in stating that the record failed to show whether or not the town of Lone Oak was incorporated under the provisions of chapter 2 of title 18 of the Revised Civil Statutes. The testimony does fail to show that Mrs. Litchfield signed the deed of trust. That, however, is unimportant, and did not affect the disposition of the case. It appears inferentially from the order entered upon the minutes of the commissioners' court that the town of Lone Oak was incorporated under chapter 2 of title 18 of the Revised Civil Statutes, relating to the incorporation of towns and villages. As stated in the original opinion, that fact would not affect the merits of the controversy. We make these corrections, however, in deference to the wishes of the appellees.

The motion for rehearing is overruled.