GUADALUPE COUNTY et al. v. POTH et al.

(Court of Civil Appeals of Texas. San Antonio. Feb. 18, 1914.)

1. MUNICIPAL CORPORATIONS (§ 1*)—NATURE AND CHARACTERISTICS.

The word "town" implies the idea of a considerable number of people living in close proximity, as distinguished from a rural settlement, but does not necessarily imply incorporation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent.Dig. §§ 1, 1½; Dec.Dig. § 1.*

For other definitions, see Words and Phrases, vol. 8, pp. 7019–7029, 7817, 7818.]

2. ADVERSE POSSESSION (§ 8*) — PROPERTY SUBJECT—LAW OF TOWN—UNINCORPORATED TOWN.

The proviso of Rev. Civ. St. 1911, art. 5683, providing that no person shall acquire by adverse possession title to any part of a street belonging to any town, "provided this law shall not apply to any alley laid out across any block or square in any city or town," applies to an unincorporated town, so that limitations would run against a town in favor of one holding adverse possession of an alley therein, which was fenced.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 14, 27, 43–57; Dec. Dig. § 8.*]

3. ADVERSE POSSESSION (§ 114*)—SUFFICIENCY OF EVIDENCE.

Evidence *held* to sustain a finding that defendants had acquired title to certain lots including the alley in a town by adverse possession.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 682, 683, 685, 686; Dec. Dig. § 114.*]

4. ADVERSE POSSESSION (§ 19*)—NOTICE OF CLAIM.

Fences placed across an alley in a town were sufficient to put the county on notice of an adverse claim to the alley by the person placing it.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 99–105; Dec. Dig. § 19.*]

5. ADVERSE POSSESSION (§ 58*)—NATURE OF HOLDING.

In order to create a title by limitations, the holding must be adverse.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 279–281; Dec. Dig. § 58.*]

6. ADVERSE POSSESSION (§ 113*)—ADMISSIONS.

An admission made by one of plaintiffs' grantors before the 10 years in which plaintiffs claimed limitations had matured, would not affect plaintiffs' title by limitations.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 669, 671–681; Dec. Dig. § 113.*]

7. MUNICIPAL CORPORATIONS (§ 325*)—ALLEYS—OPENING.

Where the evidence showed that a strip was platted as an alley, and the commissioner's court ordered it opened as such, the court could assume that the strip was an alley, in an action in which it was claimed by adverse possession, and refuse to submit that question to the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 847–849; Dec. Dig. § 325.*]

8. BOUNDARIES (§ 20*)—PROPERTY CONVEYED —ALLEY.

A deed conveying lots adjoining an alley passes title to the center of the alley.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 123–130, 132; Dec. Dig. § 20.*]

9. EVIDENCE (§ 390*)—PAROL EVIDENCE—VARYING DEEDS.

Where plaintiffs claimed under the 10 years' limitation and not under a deed, evidence by plaintiff that the lots, which included what defendants claim is an alley, were all under fence when he bought them, and that he had possession thereof for 12 years, was not objectionable as varying the terms of the deed which contains a reference to a plat and map calling for an alley.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719–1721, 1723–1728; Dec. Dig. § 390.*]

Appeal from District Court, Guadalupe County; M. Kennon, Judge.

Suit by N. Poth and another against Guadalupe County and others. From a judgment for plaintiffs, defendants appeal. Affirmed.

See, also, 153. S. W. 919.

H. M. Wurzbach, E. E. Fischer, and J. M. Woods, all of Seguin, for appellants. J. B. Dibrell, Emil Mosheim, and Seidemann & Short, all of Seguin, for appellees.

CARL, J. On March 18, 1912, Dr. N. Poth and Gus Bornemann brought this suit against the county judge and commissioners' court of Guadalupe county to enjoin them from opening or seeking to open a certain 20-foot alley situated in the town of Marion in that county, which alley runs through block 23 in said town. The court granted the temporary injunction prayed for, and upon final trial and verdict by a jury the injunction was perpetuated and judgment entered accordingly, from which judgment this appeal is taken. Poth owns lots 1, 2, 3, 4, 5, 28, 29, 30, 31, and 32; and Bornemann owns lots 13, 14, 15, 16, 17, 18, 19, and 20, all in the same block. The lots are on opposite sides of the alley in question.

The plaintiffs allege that they and those under whom they claim have had said alley fenced and have been holding, claiming, and using the same adversely for more than 20 years before the filing of the suit, and that they have title by 10 years' limitation to said alley, and that said alley had never been used by the public, and had never been cleared of brush nor in any manner improved or dealt with by Guadalupe county as a public alley, road, or street.

The whole controversy, when boiled down, is one of limitation and as to whether arti-

cle 5683 of the Revised Statutes of 1911 applies to an alley in an unincorporated town.

It seems that T. W. Pierce owned the land, upon which Marion is situated, in the year 1877, and about that time the Galveston, Harrisburg & San Antonio Railway Company built through there. The land at that time was not worth as much as it sells for now, and Pierce cut this up into lots and blocks, and he and his trustees, or successors, continued to sell out the lots; but the plat was never placed of record until July, 1911, when some parties bought some of the lots, and a plat of the town was attached to the deeds which they had recorded. This plat shows a 20-foot alley, the one in controversy.

Dr. Poth bought his part of the property from Dr. L. Hirshfield in 1910 and has since occupied the same. Dr. Hirschfield says he bought the property from Hermann T. Wolff in 1888, or 1889, and that most of the improvements were there then, and that the alley was fenced in at that time with the other. Hirshfield says that he bought lots 28, 29, and 30 a couple of months after he bought lots 1, 2, 3, 4, and 5 and fenced them all in together. There was a house, drug store, stables, and cistern on it. He says it was all fenced when he bought it, but that he tore down the fence between lots 28, 29, and 30 and the other and fenced it all in together. And he says he kept possession of all of it until he sold to Dr. Poth, which was in 1910, and during all that time he claimed the entire property, and it was never claimed by any one else. Mr. Love and Mr. Klein spoke to him about it, but he refused to open it, saying it belonged to him. These lots formed about a square, and the fence took in the alley between the lots on each side of the alley. He says, "I had it in my possession for over ten years before I sold to Dr. Poth, and I claimed it during all that time."

Bornemann says that he bought his property from Mrs. Ashby, formerly wife of Ed Haenel, in 1901 or 1902, and that Haenel and wife lived in the same residence he now lives in. The deed from Haenel is dated August 3, 1901, and Bornemann moved in a short while after. This deed embraced 17 lots in block 23, and they are located on the east side of the block, and they extend from the north to the south side of the block and include the alley. Mrs. Ashby was occupying the property at the time he bought it. He says he does not know who occupied it all of about 15 years that Haenel owned it, but that, for about five years before he bought it, Haenel lived on it, and after his death Mrs. Haenel moved away and rented the property. When he first knew the place, it was fenced with a string of picket fence. He says: "I know that fence has been there for at least 25 years, if not longer. At the time I bought that property, in 1901, I moved on it and took possession of it with my family, my wife and three children. All my property was inclosed when I took possession of it there in 1901, and I claimed it all, and there never was any street or alley through it." The witnesses all agree that the county never worked the streets and that big mesquite trees are in them. About the time the suit was filed, the county, it seems, did a little work on some of the streets in the town.

John Hicks, a merchant of Marion, who had lived there since 1886, says that, to the best of his recollection, Haenel's part was fenced at the time; but the western part was not fenced until two or three years after that. He says: "That entire block 23 has been fenced and occupied, within my knowledge, for about 23 years, and there has never been an alley claimed or worked or recognized through that block, to my knowledge. Ed. Haenel occupied the premises that Mr. Bornemann purchased up to the time of his death, which was in November, 1895, and after he died his family lived there a while, about two months, and then the property was rented to Mr. Maddox. I don't remember that the property was vacant any considerable length of time after Mrs. Haenel left. I don't know how long Dr. Wolff lived on the part of block 23 that he improved and occupied, but I should judge about 10 years, and he sold to Dr. Hirshfield, and he occupied the property then, and he occupied it 10 or 11 years, and he sold it to Dr. Poth, who occupied it after Dr. Hirshfield left, and it is now occupied. I think Dr. Wolff had possession of about one-third of block 23, the western portion, and his fence extended from north to south, the entire distance of the block, and he used it for a residence and had horse lots on it."

We deem this a sufficient statement of the evidence, and such other as may be necessary will be given in connection with the discussion that follows.

Article 5683 reads: "The right of the state shall not be barred by any of the provisions of this chapter, nor shall any person ever acquire, by occupancy or adverse possession, any right or title to any part or portion of any road, street, sidewalk or grounds which belong to any town, city or county, or which have been donated or dedicated for public use to any such town, city or county by the owner thereof, or which have been laid out or dedicated in any manner to public use in any town, city or county in this state: Provided, this law shall not apply to any alley laid out across any block or square in any city or town."

But appellants contend that the exception in the foregoing article only applies to an incorporated city or town, and, since the town of Marion is not incorporated, the proviso in the article quoted does not apply.

[1] The word "town" carries with it the idea of a considerable number of people liv-

ing in close proximity, and as distinguishable from a rural settlement. State v. Edison, 76 Tex. 302, 13 S. W. 263, 7 L. R. A. 733. But whether the town is incorporated makes no difference. There are numbers of good-sized towns not incorporated, and some that are incorporated where that is about all the claim they have to being a town. In regard to the question of urban and rural homesteads, this question has often been up, and there it is not deemed of importance. Posey v. Bass, 77 Tex. 512, 14 S. W. 156; Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145. It is admitted that Marion is not incorporated.

[2] The proviso in article 5683, "This law shall not apply to any alley laid out across any block or square in any city or town," applies to Marion, and limitation would run in favor of the holders of the strip of land, just as it would against an individual. Folsom v. City of McGregor, 10 Tex. Civ. App. 555, 30 S. W. 846; Johnston v. Llano County, 15 Tex. Civ. App. 421, 39 S. W. 995. And the fact that the town is not incorporated would not alter the case. Williams v. Willis, 84 Tex. 398, 19 S. W. 684; Iken & Co. v. Olenick, 42 Tex. 197.

[3] The evidence was ample to show title under the ten years' statute of limitation in Dr. Poth and Mr. Bornemann at the time the suit was filed, and the jury's finding on that question is final.

Appellant contends that the judgment is not justified under article 5682 of the Revised Statutes because no privity is shown between appellees and others who held said premises, and we are cited to Dotson v. Moos, 58 Tex. 152. But the facts in this case do show that the appellees and those under whom they claim did have peaceable and adverse possession of the property for more than ten years before the suit was filed, and, as will be seen from the statement of the evidence, there is privity of estate and continuity of possession. Coleman v. Thurmond, 56 Tex. 514, City of Corsicana v. Zorn, 97 Tex. 317, 78 S. W. 924, and Krause v. City of El Paso, 101 S. W. 828, do not apply here, because title by limitation is pleaded and proven to an alley, and the exception in article 5683 is that "this law shall not apply to any alley laid out across any block or square in any city or town." We are not dealing with a street, but with an alley which comes squarely within the exception or proviso, and limitation applies. Appellant contends that the evidence shows that Guadalupe county actually accepted the plat as early as 1892 by working some of the streets. Suppose it did, how does that help matters, if limitation runs against the county as to an alley and that alley is fenced? Can the county stand idly by and see parties holding its alleys under fence and claiming them, and then not be bound by the operation of limitation under the plain letter of the statute? We think not.

[4] The alley was fenced and was being held, claimed, and used by appellees and their immediate grantors for more than ten years. Their fences were of themselves enough to put the county upon notice of their adverse claim, and in addition to that the testimony is sufficient to remove any doubt as to the character of their holding.

[5] There is no doubt that the holding must be adverse to mature title by limitation (Chance v. Branch, 58 Tex. 490), but we think this has been shown. What more could be asked when the parties who have held the property swear positively that they not only had the alley fenced for more than ten years, but were claiming it the while?

[6] An admission made by one of the grantors prior to the ten years in which limitation was matured, if made, would not affect the limitation title here established by appellees. Bruce v. Washington, 80 Tex. 372, 15 S. W. 1104.

When Commissioner Hartman spoke to Bornemann about opening the alley in October or November, 1911, he asked for time to see what his rights were, and it is contended that, because he did not then say he claimed the property, he was not asserting an adverse claim. But he says he wanted to find out what his legal rights were, and that is why he asked for time. The very fact that he said he wanted to go to law about it to find out his rights would deem to be sufficient to notify any reasonable person that he claimed it, for people do not litigate about matters, as a rule, to which they make no claim.

What we have said disposes of the first six assignments adversely to appellants.

[7] The court did not err in charging the jury that it was proven as a fact that the 20-foot strip in controversy was an alley. The uncontroverted evidence shows that in the plat of Marion made by T. W. Pierce in 1877, under which the county claims, this strip is an alley through block 23. It was marked as an alley upon the plat and no question was made as to that, and the order of the court called it an alley when it was ordered opened. If the plat calls it an alley, and the commissioners' court call it one and seeks to open it as such, the trial court has a right to assume that it is an alley. And the court did not err in refusing to submit that issue to the jury. The seventh and eighth assignments are overruled.

[8] Where lots border on an alley, a deed conveying them passes title to the center of the alley as effectually as though included in the deed. Emerson v. Bedford, 21 Tex. Civ. App. 262, 51 S. W. 889; Bond et al. v. T. & P. Ry. Co., 15 Tex. Civ. App. 281, 39 S. W. 979. It was agreed by the parties that practically all the deeds out of the Pierce estate, describing the property conveyed, refer to a plat and map, which was not put on record till 1911, and that the lots on block 23 are described by numbers and reference to the

map and plat. The ninth assignment is overruled.

The court did not err in giving paragraphs 8 and 9 of the charge. Paragraph 8 is: "If you find from the evidence that on the 16th day of April, 1912, the plaintiff N. Poth, and those under whom he holds by privity of estate, had had peaceable and adverse possession of the portion of the alley in question claimed by him, cultivating, using, and enjoying the same for a period of ten years, you will find for the said plaintiff Poth." And No. 9 is the same except made applicable to Gus Bornemann instead of Dr. Poth. The objection is that there was no privity of estate shown between appellees and their respective vendors, so far as the 20-foot strip in controversy is concerned. But we have seen that the entire alley was fenced by them and their vendors for more than ten years and claimed all the time. The tenth assignment is overruled.

We have examined assignments 11 to 14, inclusive, and, finding them without merit, same are overruled.

[9] The fifteenth assignment complains that the court erred in permitting Gus Bornemann to testify, substantially, that his lots, were all under fence when he bought, and that he had possession thereof for 12 or 13 years. The objection is that the deed would be the best evidence of what he bought, and that the deed shows a reference to a plat and map calling for an alley, and that, since it calls for an alley, this would be varying the terms of a written instrument by parol testimony. This witness, and others who gave similar testimony, certainly could say what he had fenced and claimed. This is not varying a written instrument. The deed really has little to do with the matter, for, as we understand, title is not claimed under a deed which would mature title in five years, but the claim is under the ten years' limitation statute, which does not require any deed. This and the sixteenth assignment, which is of like nature, are overruled.

This court was in doubt as to whether appellants' assignments should be considered, since they do not comply with the rules; but we have carefully considered all of them and do not find anything that would justify a reversal.

The judgment is therefore affirmed.