## JONES et ux. v. FIRST NAT. BANK OF McALLEN. (No. 501–3916.)

(Commission of Appeals of Texas, Section A. March 12, 1924.)

**1. Homestead ⬤➡60—Property situated entirely or partially within corporate limits may constitute "rural homestead."**

Within Const. art. 16, § 51, defining a homestead, property situated entirely or partially within corporate limits of a city, town, or village may constitute a "rural homestead."

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Rural Homestead.]

**2. Homestead ⬤➡64—Property located beyond corporate limits may constitute "urban homestead."**

Property located beyond corporate limits of a city, town, or village may constitute an "urban homestead" when the municipality is extended by growth.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Urban Homestead.]

**3. Homestead ⬤➡60 — Property held rural homestead when first purchased and occupied by vendee.**

Property when purchased and first occupied as a home by defendants was clearly their rural homestead, where all the property was used as a farm, though the portion on which the residence was situated was within corporate limits of a city.

**4. Appeal and error ⬤➡842(1)—When character of homestead whether rural or urban becomes matter of law for purpose of review.**

If the conditions and circumstances surrounding a home are such that reasonable minds could not differ as to whether it is a rural or an urban homestead, the question as to its character is a matter of law for purpose of review.

**5. Appeal and error ⬤➡842(1)—Evidence held to raise question of fact and to warrant conclusion homestead embraced all of two lots.**

Evidence of conditions and circumstances surrounding defendants' home on that portion of lot 12 which was within the boundaries of a city, and defendants' use of lot 11 and that part of lot 12 which were beyond the city limits *held* to raise an issue of fact, and to warrant finding that defendants' homestead embraced all of said lots, and reversal by the Court of Civil Appeals on the theory the question was one of law was unwarranted.

Error to Court of Civil Appeals of Fourth Supreme Judicial District.

Suit by the First National Bank of McAllen, Tex., against Chas. Jones and wife. From a judgment of the district court granting partial relief, plaintiff appealed to the Court of Civil Appeals which reversed the judgment in part (244 S. W. 1057), and defendants bring error. Judgment of Court of Civil Appeals reversed, and that of district court affirmed.

McDaniel & Bounds and D. W. Glasscock, all of McAllen, for plaintiffs in error.

J. E. Leslie, of McAllen, for defendant in error.

BISHOP, J. The First National Bank of McAllen, defendant in error, filed suit in the district court against plaintiffs in error on a promissory note and to foreclose an attachment lien on lot 11 and the east 4½ acres of lot 12 in the northeast quarter of section 8 of Hidalgo Canal Company's subdivision of its lands in porciones 64, 65, and 66 in Hidalgo county, Tex. Plaintiffs in error alleged that said land was their homestead, and not subject to foreclosure under attachment sued out by defendant in error. The case was tried by the court without a jury, and resulted in a judgment in favor of defendant in error on the note, but denying foreclosure of attachment lien, the court holding that the land was the homestead of plaintiff in error and his wife, Effie Jones, and not subject to attachment, and that no lien was obtained by the levy thereof.

We quote findings and conclusions of the trial court as follows:

"On August 21, 1916, Charles Jones and wife purchased all of lots 11 and 12 of the N. E. quarter of section 8 of the Hidalgo Canal Company's subdivision in porciones 64, 65, 66, and moved onto the property on September 4, 1916. The price of 21 acres was $4,500, and the fair market value outside of improvements was $3,500. The store was bought by defendant Jones in 1915, and he carried on the business until a few months ago, and was in business when the attachment in this case was levied. The store was in the business part of McAllen next to the First National Bank, but it seems that defendant Jones did not own the building. His children attended the public school, and he voted in city elections, and was a candidate for city commissioner. According to the map of the city all of lot 11 and a portion of lot 12 is east of and outside of the city limits; and both are north of what is known as Palm Heights. There are 11 acres in each of lots 11 and 12, and something less than two-thirds of lot 12 is outside of the city limits, as is all of

lot 11, which lies east of lot 12, and the west line of lot 11 and the east of lot 12 are coincident. The family residence is on the 'west part of lot 12, and north of it on lot 12 is a small house which a daughter of the family was permitted to build and live in while her husband was in the army during the late war, and on the west part of lot 12 fronting on Tenth street a son of the family has been permitted to erect a small building which he uses as a shop in which to do automobile work. To the northeast on the west part of lot 12 is a 'shack' which was on the land when it was bought. In front of the residence, coincident with the west line of lot 12, is Tenth street which was paved by the city, and across that street west is property which is later described herein. At the time the property was purchased what is now described on the map as Palm Heights had not been laid out for residence purposes; but was in a nursery. North of the property in question and east of it at the time it was bought were farms. In front of the property (west) only one person lived when the property was bought, 'a Mrs. Bingham. At the time the two tracts immediately west of this property was in brush, the same being what is shown on the map as blocks Nos. 1, 6, 17, 32, 33, 48, 49, 50, 47, 34, 31, 18, 15, and 2, the first 7 lying next to lot 12 (the street or road between) and west of it, and the other 7 still west of the first 7. On the blocks named above there are now houses built respectively as follows: On block 50, 3 houses; on 49, three houses; on 47, 4 houses; on 48, 3 houses, and a church being built; on 33, 2 houses; on 34, none; on 32, 2 houses; on 31, 6 houses. Block 18 is all occupied by houses. On block 16 there are no houses; on block 15 one house, and on the block behind that there are two 'shacks.' On block 2 there are 3 houses. On the north side of Palm Heights is not built up. On the north side of the block No. Lot 2 is a little garage. There are three houses on block No. 3, Palm Heights, and there are other houses in Palm Heights, which as has already been said was a nursery when defendant Jones bought the property in question. The Hart subdivision north of the Jones property was an old nursery when defendant Jones bought, but has been subdivided, and there are now several houses there. On blocks 1, 2, 3, and 4 the city took in 300 feet, but there are no houses to the north on the Jones property. There are two farm houses on lot 6, and all east of the Jones property is farms. Other settled property on various lots near the Jones property is as follows: On lots 7, 8, 9, and 10, block 48, two houses, and on lots 1 and 2 on the east side of block 48, one house. The residence of Mr. McDaniel and one other house are on lots 1, 2, 3, 4, 5, and 6, block 33. On lot 32 is a residence, and on lots 7, 8, and 9 of block 32 is another residence, and on the east side of 17 is Mr. Barley's residence, and on the north of that is another small residence, and Mr. Osborn has a residence on west side of 16 or 17, and on the west side of 17 Mr. Sheldon has a house on lot 12 and a larger house about lot 10, and there is a garage on lot 8. There are no houses on 16, and on block 18 there is a house on lot 6, 5 or 4, and 3 or 4 houses on the east side of 13. Further buildings are as follows: North of the Jones property are 3 houses on block 5, Hart subdivision, south of the Jones property on Tenth street

are the residences of Bentley and Daniels, and Charles Rich has a residence on lot 9, block 3, Palm Heights. There is nothing on lots 6 or 7, block 4, Palm Heights. One Trotti lives on lot 1, block 5, Palm Heights, and Kerwin lives on lot 2, block 5, Palm Heights. Palm Heights was laid off in 1917. Defendant Jones at one time surveyed and platted his land into lots, and drove stakes, and had streets and alleys made, and drove stakes, and had the plat recorded, but the city has never opened any streets through it, and the most of it is still in farms. The Jones have farmed lots 11 and 12 since they purchased the property, and was so using it when the attachment was run. They had one team of mules, 85 hogs, 4 cows, and some chickens. At the same time defendant Jones was carrying on his mercantile business, which he bought in 1915. He did not do the manual labor on the farm himself, but had it done by Mexican labor, which he supervised. A strip 300 feet wide across lot 12 on west side is in the city limits, and electric lights reach out that far. McAllen is a town of about 5,300 population. Defendant Jones quit the feed business on May 11, 1921, four days after the attachment was run upon the property in question. When the property was bought its value, even with improvements, was less than the constitutional limit as applied to urban homestead, and there is no limit of value as applied to rural homestead. If the homestead cannot be part rural and part urban, then it must be assigned to that class in which its size, its location, the uses to which it is put, and the whole environment places it. I attach no importance to the defendant Jones having surveyed part of it into lots and streets. Whatever purpose or expectation he may have had of its becoming some time a part of the city, such expectation has never been realized. The city paved the street in front of it, but beyond that no part of the property has ever been subjected to city uses. It was when purchased essentially a farm; and has been and is yet so used. Even if every part of it was in the city, its value at the time it was set apart as a homestead is within that limit which accords to it the constitutional exemption from forced sale. This being true, it was not subject to the levy, and therefore judgment is rendered for the defendants."

On appeal by defendant in error the judgment of the trial court was by the Court of Civil Appeals reversed, in so far as it denied the foreclosure of the attachment lien, and judgment rendered foreclosing lien as prayed for by defendant in error. 244 S. W. 1057.

The land included in lot 11 and that portion of lot 12 upon which the writ of attachment was levied is not within the corporate limits of the city of McAllen, but lies just east thereof. However, that part of lot 12 upon which the residence of plaintiffs in error is situated is within the corporate limits of said city.

[1, 2] The question here presented is whether the evidence as stated in the above findings raises an issue of fact upon which the trial court was warranted in concluding that the land upon which the writ of attachment

was issued was a part of the homestead of plaintiffs in error, or whether as a matter of law same should be held to be no part of the homestead. Our Constitution provides:

"The homestead, not in a town or city, shall consist of not more than 200 acres of land, which may be in one or more parcels, with the improvements thereon; the homestead in a city, town or village, shall consist of lot or lots, not to exceed in value $5,000, at the time of their designation as the homestead, without reference to the value of any improvements thereon; provided, that the same shall be used for the purposes of a home, or as a place to exercise the calling or business of the head of a family; provided, also, that any temporary renting of the homestead shall not change the character of the same, when no other homestead has been acquired." Article 16, § 51.

[3] The mere fact that land may be situated within the corporate limits of a city, town, or village is not controlling in determining whether in the meaning of the Constitution such land is in such city, town, or village. Property may constitute a rural homestead though it be situated entirely or partially within such corporate limits. It may be an urban homestead in a town or village not incorporated. A city, town, or village, even when incorporated, may grow until it has extended beyond its corporate limits, and property located outside such limits may constitute an urban homestead and be in the city, town, or village, within the meaning of the Constitution. This property when purchased and first occupied as a home by plaintiffs in error was clearly their rural homestead. This is true for the reason that same, though the portion on which the residence was situated was within the corporate limits, was not being used as city property, and none of the property adjoining it was being so used. It was itself being used as a farm, and all the property surrounding it was being so used, or used for nurseries, or in the brush, and put to no particular use. At that time none of the property in this immediate neighborhood could, under our Constitution, be said to be in the city of McAllen. Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145; Posey v. Bass, 77 Tex. 512, 14 S. W. 156. As said in the opinion last cited:

"It is the place of the homestead that gives character to it, not the business of the head of the family. If it be in the country it is a rural homestead; if it be in a city it is an urban residence."

Soon after plaintiffs in error established their home on this property the city of McAllen began to experience a rather rapid growth. The two tracts immediately west of this property, and between it and the city of McAllen, which were in brush and not occupied, were laid off in blocks and lots, and quite a number of houses were built thereon at the time the writ of attachment issued.

Just west of the Jones residence, and along the west boundary line of this property is Tenth street, which was paved by the city. South of this property, which was a nursery when plaintiffs in error bought, was in 1917 laid off into blocks and lots, and is known as Palm Heights. While some houses had been built in Palm Heights at the time writ of attachment issued, the north side of same, being that portion adjoining the property here involved, was not built up. There were also some houses built on what is known as Hart subdivision north of the Jones property. Plaintiffs in error have lived on and farmed this property by hired labor since they purchased it, and were so using it at the time attachment issued, having a team of mules, 85 hogs, 4 cows, and some chickens thereon.

The facts of this case are somewhat similar to the facts in the case of Paris Exchange Bank v. Hulen, 21 Tex. Civ. App. 285, 52 S. W. 278, in which the Court of Civil Appeals affirmed the judgment of the district court perpetuating an injunction restraining a sale under execution of land claimed as a rural homestead, and in which the Supreme Court refused a writ of error. In that case the evidence more strongly indicated that the residence situated on the 40 acres claimed as the rural homestead was in the city than it does in the instant case. In the case of Lauchheimer & Sons v. Saunders, 97 Tex. 137, 76 S. W. 750, the Supreme Court, in an opinion by Justice Brown, says:

"Whether the home be urban or rural depends upon the conditions and circumstances which surround it at the time the adverse right is asserted. The Constitution exempts the homestead whether urban or rural when it is established, but it does not guarantee that the character impressed upon the property at one time shall continue for the future. Wilder v. McConnell, before cited; Bull v. Conroe, 13 Wis. 233; Taylor v. Boulware, 17 Tex. 78, 67 Am. Dec. 642; Iken v. Olenick, 42 Tex. 196. When a rural homestead right exists in lands adjacent to a town or city, the mere fact of the extension of the corporate lines of that city or town so as to embrace the homestead, or a part of it, will not destroy the character of the rural homestead, nor impair the rights of the owner in the property as such. Wilder v. McConnell, before cited; Posey v. Bass, 77 Tex. 512, 14 S. W. 156. But, should the town actually build and extend so as to include what was before in the country, it would then become in fact a part of the town, and by virtue of the Constitution the character of the homestead would be changed by the changed conditions from rural to urban without regard to the question of incorporation. Iken v. Olenick, before cited; Roberts v. Cawthon (Tex. Civ. App.) 63 S. W. 332; Watkins v. Abott (Tex. Civ. App.) 37 S. W. 252; Williams v. Willis, 84 Tex. 398, 19 S. W. 683."

The court also says:

"An application for writ of error was presented to this court in the case of Paris Exchange Bank v. Hulen (Tex. Civ. App.) 52 S.

W. 278; but, as presented, the character of the homestead of Hulen was one of fact not established by the undisputed evidence to be urban or rural. The question was submitted to a jury, and decided in favor of Hulen, and, this court had no power to grant a writ of error in the case because it had no jurisdiction over the disputed question of fact. In the case of Wilder v. McConnell, 91 Tex. 600, 45 S. W. 145, the findings of fact made by the trial court did not show that any change had been made in the conditions and circumstances that surrounded the property after it had been embraced within the limits of the city of Weatherford. It did not appear that the town had extended so as to include what was before rural property, and this court held that the conditions existing at the time the boundaries of Weatherford were extended had not been shown to be changed, and that, therefore, the existing right of a rural homestead was not destroyed."

[4, 5] If the conditions and circumstances surrounding a home are such that reasonable minds could not differ as to whether it is a rural or an urban homestead the question as to its character is a matter of law. Here reasonable minds may differ as to whether, under the facts, the city of McAllen has so grown as to include the residence and part of lot 12 not included in the attachment levy, and change its character from that of rural to an urban homestead. We also think the evidence raises an issue of fact as to whether all of lots 11 and 12 are in the city of McAllen within the meaning of the Constitution, and constitute the urban homestead of plaintiffs in error, for both these lots were being used as a home, and did not exceed in value the limitation fixed by the Constitution.

We think the trial court was warranted in holding that the homestead of plaintiff in error embraced all of lots 11 and 12, and that the Court of Civil Appeals erred in holding as a matter of law that that portion of the property upon which writ of attachment was levied was no part of the homestead, and recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.